Commonwealth of Pennsylvania ex rel. W. U. Hensel, Attorney General, *v.* Order of Solon. Appeal of B. F. Todd, S. Roberts et al.

*Attorneys at law—Counsel fees—Beneficial association.*

Where a fund constituting the assets of a beneficial association is in the hands of a receiver and auditors have been appointed to distribute it, an attorney at law, representing certain of the members, who has succeeded in having a large number of unfounded claims excluded from the distribution, is not entitled to be paid for his services out of the fund.

*Beneficial associations—Distribution of assets after dissolution—Assignment.*

A stipulation in a certificate of membership of a beneficial association that the certificate shall not be assigned is not obligatory on the member after the dissolution of the association.

Argued May 30, 1899. Appeal, No. 28, May T., 1899, by B. F. Todd et al., from order of C. P. Dauphin Co., June T., 1894, No. 310, dismissing exceptions to auditors' report. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Reversed.

Exceptions to report of auditors, James H. Stranahan and Albert Miller, Esqs.

The facts appear by the opinion of the Supreme Court.

*Errors assigned* were in dismissing exceptions to auditors' report.

*J. G. White*, for appellant.—The assignment of the certificate

was a breach of faith and fraternal duty on the part of the member, punished by making the certificate void in the hands of a third person. This provision was necessary to protect the order against the danger of accepting to membership any one who might purchase a certificate, who at the same time might be objectionable as a member of the order.

That the court erred in allowing attorney fees out of the body of the fund to holders of assigned certificates for representing these claims before the auditors is too apparent to require discussion. These holders by assignment are merely speculators, who bought certificates, void by their terms, and who had no equities. If they are paid attorney fees for defending their claims against this fund, then every claimant of every kind should be allowed attorney fees. The claim of the auditors that the efforts of such attorneys incidentally benefited holders of unassigned certificates, hence they should be paid out of the fund, cannot be sustained, as they were only employed by said assignees, and must look to them for payment for professional services.

*Lyman D. Gilbert*, with him *Josiah H. Quincy*, for appellee. —After the death of a member of a beneficial association, when the right to the fund has become absolute in the beneficiary, this right may be assigned as any other chose in action: Niblack, Benefit Societies, sec. 171; Dogge v. Northwestern Nat. Ins. Co., 49 Wis. 501; Greene v. Republic Fire Ins. Co., 84 N. Y. 572; Combs v. Shrewsbury Mut. Fire Ins. Co., 32 N. J. Eq. 512; Briggs v. Earle, 139 Mass. 473.

The right of membership depends, not only upon the benefit certificate, but upon the charter, constitution and general laws. The benefit certificate is simply evidence of membership: Simeral v. Dubuque Mutual Fire Ins. Co., 18 Iowa, 322; Hellenburg v. I. O. of B. B., 94 N. Y. 580; Catholic Knights v. Kuhn, 91 Tenn. 217; Marsh v. Supreme Council Am. Legion of Honor, 149 Mass. 512; Sargent v. Supreme Lodge of the Knights of Honor, 158 Mass. 557; Lorscher v. Supreme Lodge of the Knights of Honor, 72 Mich. 316; Fogg v. Order of the Golden Lion, 159 Mass. 9.

The allowance from fund for attorneys' fees and expenses was proper: Hobbs v. McLean, 117 U. S. 567; Kennedy's Est.,

141 Pa. 479; Freeman v. Shreve, 86 Pa. 138; Richards v.
Morris Canal & Banking Co., 4 N. J. Eq. 428; Davis v. Bay
State League, 158 Mass. 434; Burdon v. Mass. Safety Fund
Assn., 147 Mass. 370; Fraternal Guardians' Assigned Est., 159
Pa. 594; Ex parte Plitt, 2 Wall. Jr. 453.

OPINION BY MR. JUSTICE DEAN, October 6, 1899:

At the instance of the attorney general, a judgment of ouster
against the Order of Solon, a beneficial corporation, was en-
tered by the court below, May 25, 1894, and William H. Gas-
kill appointed receiver. A very large fund came into his hands,
and auditors were appointed to distribute it among those en-
titled to the same. The claimants for the most part were those
holding benefit certificates of membership in the order, of whom
there were several hundred; the contributions of benefit mem-
bers made up the fund for distribution. Subsequent to the
judgment of ouster, Matthew Dolan and others purchased large
numbers of the certificates, aggregating a large value, from
members, at a discount, and presented them before the auditors
as claims on the fund. In this presentation, they were repre-
sented by Josiah H. Quincy, Esq., who, acting for his clients,
successfully objected to the payment of other claims to the
amount of about $50,000. By that much the fund was in-
creased for distribution to unobjectionable claimants. It does
not appear how many of these disallowed claims were, on their
face, unsustainable, nor just how they were effectually resisted,
whether by evidence or argument. But the clients of Mr.
Quincy claimed that he be allowed for attorney fees and ex-
penses out of the fund; the auditors awarded him $3,130.62.
To this award, B. F. Todd and others, not clients of Mr. Quincy,
but actual members of the order, excepted; the court overruled
the exceptions, and they now appeal.

It is somewhat difficult to understand, in view of the admitted
facts, on what grounds, legal or equitable, this claim was al-
lowed. Mr. Quincy had no claim at law against the certificate
holders who did not retain him; who did not even impliedly
request his professional services. Will equity sustain the
award? It is conceded that the distribution of a fund in the
hands of a receiver or other trustee is to be governed by equi-
table principles; and where the attorney of one of several par-

ties, all equally interested, secures a fund which would otherwise have been embezzled or lost, and all share equally in the distribution, it is but equitable that all should share in the expense which produced the fund, although but one moved in the matter. But there is no such case here. The commonwealth, by her attorney general, prosecuted the case to judgment of ouster; it was the imperative duty of the court entering the judgment to put the funds into the hands of a trustee, which it immediately did, by appointing a receiver who qualified. The fund was then beyond peril; it was in possession of the court by its own officer. The court then appointed two very able auditors to indicate to it to whom and in what proportions the money should be paid; they did so, and were very liberally compensated out of the fund. A large number of claims, not belonging to members of the order, but which had been purchased by those having no connection with it, were presented for the first time before the auditors by their attorney, Mr. Quincy, and allowed. On their face, these claims were of doubtful standing. The certificate member expressly contracted with his order in the instrument itself that he would not assign or transfer it, and that any such assignment should render it void. Yet with this palpable violation of the contract on the face of the paper, the holder presented it for payment. The weight of authority, although there is no case in this state that so holds, seems to determine that this stipulation is not obligatory on the member after the dissolution of the order or association. The auditors and court below so decided, and although a close question we concur with them. But it is clear that this was the pinch of the case before the auditors, and in securing a decision in favor of his clients, the speculative purchasers of the certificates, Mr. Quincy deserves a very liberal compensation, and his clients should promptly pay him. But no such obstacle stood in the way of the actual members who had not parted with their certificates. They could rely on their certificates as conclusive evidence of the fact of their right, and on the learning and integrity of the court and its officers for the just legal conclusion to be drawn therefrom. Up to this point they needed not the advice or professional services of some other claimants' lawyer to press their suit. But, it is urged, that Mr. Quincy, from his argument, and some

evidence produced by him, induced the auditors to reject many thousand dollars of spurious claims on the fund, and thereby all holders of certificates, whether purchased by or originally issued to them, were benefited. Admit it; but he did only what he was bound to do under his professional obligation to his own clients ; if he had done less, he would have failed in duty to them; in this particular he owed no duty to other claimants and performed none to them, although an incidental benefit may have resulted to them from the performance of a duty to his own clients. This, however, gives him no claim on them for contribution to his compensation. Suppose, as there might easily have been from the large number of claimants, thirty lawyers representing thirty separate claims, and fifty unrepresented certificate holders before the auditors, and every lawyer had urged successfully a point which induced the rejection of some unfounded claim, then compensation to each, at the rate here allowed, would have swept away the whole fund. That this claim being only for one lawyer, in no degree under the facts raises an equity in his favor. It would have been otherwise if the fund in the beginning had been raised or saved by him as counsel for his particular clients. That the court and its officers did not pay out the money on wholly unfounded claims was not, it strikes us from the report, due to the astuteness of counsel, but to the palpable baselessness of the demand. We think the exception to the award of counsel fees and expenses, in the sum of $3,130.62, should have been sustained ; therefore, so much of the decree of the court below as allows this amount is reversed, and that sum is directed to be put in the general fund for distribution among all the certificate holders.