———o———

No. 3740.

Court of Appeal, Parish of Orleans.

## MRS. ANNA FELLMAN, Widow, vs. MERCANTILE FIRE AND MARINE INSURANCE COMPANY, OF BOSTON.

1. Where an insurer, having the option under the stipulations of a policy of fire insurance to either pay the money indemnity named in the policy, or to repair, rebuild or restore the property, the contract is, in a sense, converted into a building contract, and if the insurer does restore the building substantially to its condition before the fire, it will be a full defense to a suit on the policy.
2. Where, however, the insurer, through unreasonable delays, fails to complete the rebuilding, repairing or replacing, or the work is not prosecuted or is deficient or defective, the measure of the insurer's liability is the difference between the value of such repairs as are made and as are of substantial benefit to the assured, and what the value would have been if the repairs had been fully completed.
3. If the insurer has not elected to rebuild, repair or restore and he

is sued for the money indemnity, it is not necessary for the assured to aver in his petition, in an action on the policy, that the insurer refused to repair, rebuild or replace; and on the other hand if the insurer has made such elect but is nevertheless sued by the assured for the money indemnity, the latter may recover same, if the insurer does not choose to set up the election as a defense.

4. If a party mistake his right in the petition, but offers evidence which clearly establishes a valid cause of action, the error is cured by evidence establishing it, if, when offered, it is not objected to.

Appeal from Civil District Court, Division "B."

Saunders & Gurley, for Plaintiff and Appellee.

Howe, Spencer & Cocke, for Defendant and Appellant.

MOORE, J.   This was a suit on a policy of fire insurance.

The substantial allegations of the petition are that on the 1st day of May, 1903, the defendant company issued to petitioner its policy in the sum of $1000.00 insuring against loss by fire, her buildings, Nos. 709-711 Camp street in the City of New Orleans and appurtenances thereto; that the said policy permitted $5000 additional insurance and that availing herself of this permission the plaintiff placed additional insurance on said property with the Phoenix Insurance Company of Brooklyn in said sum.   That on the 7th December, 1903, a fire, originated in an adjoining building communicated to petitioner's building and damaged and injured it to the extent of $3,272.72; that this loss is to be prorated between the two said companies in the proportion of their respective risks, thus making the amount due by the defendant company $545.45/100; that upon making proof of said loss the defendant company called for an arbitration, according to the terms of its policy, but subsequently withdrew same and elected to restore the building to its condition before the fire; that defendant failed to restore the building or to pay the amount of the loss. and she, therefore, prayed for Judgment against defendant for its prorata of said loss as above stated.

The answer, after first denying generally the allegations of the petition, specially admits the issuance of the policy declared on; its being in full force and effect on the occasion stated; the occurrence of the fire and the resulting damage to plaintiff's

property, which damage it averred, however, was but "trifling;" the election by the defendant company to repair and replace said building and then proceeds, in reference to its election to repair and replace, to aver that "it duly notified the plaintiff that it elected to repair and replace said building so as to comply with the obligations of the defendant under said policy; that the plaintiff acquiesced in the proposed action of the defendant, and that, this defendant entered upon and did repair said property, as it had a right to do; that the plaintiff, not regarding her obligation or the rights of the defendant, and after the defendant had entered upon said work, attempted to prevent the defendant from proceeding with said repairs, and without waiting for the completion of said repairs, instituted this suit; that it has in all respects complied with its obligation under the law and the terms of said policy and owes plaintiff nothing."

After all the evidence, pro and con, had been introduced and the case was closed, defendant tendered an exception to the effect; "that neither the pleadings nor the evidence adduced therein disclosed any right or cause of action against this defendant."

There was judgment in favor of the plaintiff as prayed for and defendant appeals.

It will be perceived that the sole question put at issue by the pleadings is whether the defendant Company, exercising the option which it had under the policy of repairing or rebuilding the property did in point of fact, and as it avers in its answer it did, "enter upon and did repair said property and did in all respects comply with its obligations under the law and the terms of the policy." If the defendant Company has done this and the property has been restored to the condition in which it was before the fire, it is a full defense.

If it has not done so, it is liable to the insured in damages, measured according to the rule which obtains in the assessment of damages in case of the breach of a building contract.

Accordingly, if the defendant company has made no effort to carry out, in good faith, its obligation to repair, rebuild or restore the measure of damages is the entire amount necessary to do the work or if it had begun the work and desisted before

105

completion, or if the work was completed is of defective execution, the measure of damage is then the difference between the value of the work done, if it is of any substantial advantage or benefit to the assured, and that of the work which should have been done to completely restore the building to the condition in which it was before the fire.

May on Insurance, Vol. 2, 434; Wood on Fire Insurance, Vol. I pp. 324, 326, 330, 331; Henderson, vs. Crescent Insurance Co. 48 A. 1176; Fire Association of Philadelphia, vs. Rosenthal, 108 Pa. St. 474.

Morrel vs. Insurance Co., 33 N. Y., 429.

Beals vs. Insurance Co., 36 N. Y., 522;

Wynkoop vs. Insurance Co., 91 N. Y., 479;

Parker vs. Eagle Insurance Co., 9 Gray, 152.

Hartford Ins. Co. vs. Peeblos, 82 F. R. 546.

The facts, as we appreciate them, are as follows: A fire which originated in the building adjoining plaintiff's communicated to the latter's building and destroyed the party wall existing between the properties; smoke and water damaging, to a considerable extent, the interior of plaintiff's property.

The party wall, up to the line of the second story of the building, was 18 inches in thickness, thence 13 inches up to the top, or fourth floor.

Beginning at a point about two feet below the second story line and extending to its entire hight, the wall, subjected as it was to the combined action of intense heat and to drenching by great volumns of water being pumped on it, developed great cracks, in some instances penetrating entirely through the wall; the cohesiveness of the mortar used in the construction was impaired, thus loosening the joints and causing the bricks with which the wall was built to fall, the bricks themselves being scalded, cracked, and broke into fine bits, with the result that, to the extent of from three to four inches in depth; varying at different points, the wall, from the second story line to the top, was so injured and destroyed as to render it useless for the purpose for which it was intended and was employed.

In the interior of the building all the papering in the rooms

and halls was damaged by smoke and water; the plastering that was on plaintiff's side of the party wall was badly water soaked, crumbled and fell off; the calsomining in other rooms was water streaked, and a newly painted main hall smeared and blackened; and similar damage by smoke and water, was done elsewhere about the premises.

The defendant company, in accordance with its election to repair and restore, entered upon the building and undertook to restore the party wall by a process known in the nomenclature of brick-masons as "Veneering." This process consists in reducing the depth or thickness of the original wall by four inches on the side which has sustained the injury, then building up alongside of what remains of the original wall, a new wall of four inches in thickness, placing at every sixth or seventh course a "header course," that is to say, a "brick laid lengthwise across the thickness of the wall so as to act as a bond, of four inches deep. This is a thirteen inch wall, as was the wall in question here, the veneering reduces the original wall to five inches, or half a brick, at the points where the "header courses" are put in, and to nine inches at the remaining portion. It is conclusively established that it is almost impossible to get the "headers" in a veneered work to remain in place, the new brick seldom adhering to the old surface owing to the fact that the old wall being thoroughly dried and settled, and because the weight of the new wall, as it is built up every two or three feet, squeezes out and pulls away mortar joints, which are necessarily soft, from the old wall. In other words there is no cohessiveness between the new work, or veneered portion of the wall, and what remains of the old, or original wall against which the veneering is done. The result of such work is, that instead of having one solid wall of the original thickness, there are two walls, side by side, one—the original wall—as in the instant case, of five inches in thickness in that portion of the wall in which the "headers" are placed and nine inches in other portions, and a separate and independent wall four inches in thickness all along, except at "header" points, which are increased by four inches.

This character of the work—the process of veneering, is de-

nominated by well known, competent and reputable experts who testified in the cause, as "patch work" and "cheap substitutes," and they affirm that no first class and conscientious builder or architect would, under any consideration, be connected, or identified, with the veneering of a wall of any thickness and still less with a 13 inch wall supporting a four story building. That veneering the wall in question is in no sense a restoration of it; that a 13-inch wall is the thinnest wall employed in any building in the city of New Orleans; that to renew such a wall not only does not restore it to anything approximating its former strength and durability, but may result, as has resulted in other and similar cases, disastrously; that the wall was so badly injured that it could be restored to its former condition only by tearing it down completely to about 2 feet below the second story line and building an entirely new branch wall from the point up; and that consequently the work done by the defendant in veneering the wall, has no appreciable value whatsoever; is of no supplantial benefit or value to the plaintiff, and cannot be taken into account in estimating the cost of restoring the wall to the condition in which it was before the fire, is conclusively established.

The fire, which caused the damage, occured on the 7th Dec. 1903, and the veneering was done by the defendant prior to the institution of this suit, the date at which it was filed being 13th April 1904.

Subsequently, however, the defendant company undertook to repair the damaged interior of the building by repapering the rooms and halls in which the papering had been destroyed. The process of repairing was somewhat on the order of the veneering. Over the walls which the fire had cracked in several places, and from which the water soaked plaster had fallen, there was tacked the cloth usually employed for that purpose of papering, and on this the papering was laid. The work when completed, conveyed to the eye the appearance of a perfect finish, but the slighest pressure of the hand on it, revealed the unfinished condition existing behind it all. This work was absolutely valueless as it will have to be torn off; the walls will first have to be repaired and replastered and then repapered.

It is shown that the cost of restoring the wall and the interior

of the building to their former condition will be from $3315.00, (the highest estimate testified to) to $3272.72, the lowest.

This latter figured is that which is alleged as the amount of the damages, and the one which the trial judge adopted as the basis for the fixation of the pro rata liability of defendant.

It may not be doubted that from this statement of facts, which are abundantly sustained by the record, the judgment appealed from must be sustained, unless there is merit in defendant's plea of no cause of action, which, was filed, as stated, after all the evidence had been administered.

The contention is substantially (and it is on the exception of no cause of action alone that counsel for defendant have confessed themselves in both their oral and printed arguments,) that for as much as the plaintiff is suing for the money indemnity named in the policy to the extent of the loss sustained, instead of for damages under a building contract, to which the policy of insurance was converted by the election of the insurer, under the terms of the policy, the suit, no matter what the evidence may establish, must be dismissed as of non suit, and plaintiff relegated to a new suit founded on an action for damages under a building contract.

The argument, to quote it in full from the brief of counsel for the defendant, is as follows

"The plaintiff's theory of this case, as disclosed by the petition, and the evidence introduced to sustain it, is that although the defendant had exercised its option under the policy to repair or replace the building in its former condition, and had actually entered, upon and done the work and tendered her the restored building, she could nevertheless, not deeming the building properly restored to its former condition, disregard this state of affairs and sue for the money indemnity stipulated in the policy or, in other words, sue for an amount representing the damage done to the building by the fire. And this suit is for the defendant's proportion of the estimated damages done by the fire, just as though the defendant had not elected to, and had not attempted to restore and replace the building; in fact, the allegation is made that the defendant had neither restored the building nor paid the damage. The defendant's theory of the plaintiff's rights is,

that the election by the defendant to repair or restore the building, and the entering upon such work by it, converted, in a sense, its contract with the plaintiff into a building contract, which obligated the defendant to restore the building to the condition in which it was before the fire, irrespective of the amount named in the policy, irrespective of the amount of damage done to the building by the fire, and from which obligation it could only be discharged by a performance, and that in these circumstances the plaintiff's right of action against the defendant would be for damages for the breach of this building contract, just as if the defendant were a contractor who had entered into a contract with the plaintiff to build or repair the premises."

It will be noticed that the contention is not that plaintiff has failed to prove, 1st: that the building had not been restored by defendant to the condition in which it was before the fire; 2: that the work done by defendant was absolutely of no value and therefore not to be taken into account in ascertaining the cost of completion; and 3rd: that the cost of repairing, rebuilding and restoring had not been fully established, but is based solely on the fact, as averred by defendant that plaintiff has mistaken her cause of action and should therefore, be compelled to begin anew on the cause of action which she really has.

The answer to this is fivefold.

In the first place a suit to enforce payment under a policy of insurance, whether, according to the circumstances of each case, the measure of the insurer's liability is the loss covered by the money indemnity, or the damage estimated and ascertained according to the rule which obtains in cases of breach of a building contract, is nonetheless a suit on the contract of insurance, otherwise called the policy.

In either event it is a suit to enforce one of the alternative stipulations of the policy, the insurer having the option, if it be so nominated in the contract, either to pay money indemnity, or to repair, rebuild or restore. "The option to rebuild is but one mode of payment of the damages covered by the policy." May on Insurance No. 426; Ostrander on Insurance p. 510.

If the insurer has not elected to rebuild and he is sued for the money indemnity, it is not necessary for the assured to aver in

his petition in an action on the policy for the amount of the loss, that the insurer refuses to repair, rebuild or restore the property destroyed; Wood Fire Insurance p. 326; and on the other hand if such an action is brought and the insurer has in point of fact elected to restore, the plaintiff may yet recover the money indemnity, *if the insurer does not choose to set up the election as a defense.* In Howard Fire and Marine Insurance Co. vs. Cornick 24 Ills. 455, and in Dayton etc. vs. McCookley 33 Ohio St. 555 this same question arose and it was held in both cases that "the right to replace the property is a matter of defense and need not be negatived in the complaint in an action on the policy."

The cases cited by defendant in support of its contention, so far as they are applicable to the question now under discussion, are really against the company's position; and some of them are not on this question at all. We will review them.

Morrell, vs. The Irving Fire Insurance Company 33 N. Y. 429 was an action on a fire policy for the money indemnity. The answer, for a defense set up the election by the insurer to rebuild; the erection of the building in pursuance of the election and the acceptance of the building by the respondent. As in the instant case, the defendant company in that case, after putting in their evidence in chief, moved to dismiss the complaint on the ground "that the action should have been brought upon the condition or covenant to rebuild and not upon the policy." This motion was overruled by the trial judge and judgment was rendered in favor of the plaintiff for the full amount of the policy and interest. On appeal the Court held that the rule of damages laid down by the judge at the circuit was erroneous, forasmuch as by the terms of the policy, the defendants contracted that in case the insured premises should be destroyed by fire, they would make good the loss to the extent of $3,000 (the amount of the policy), or rebuild the edifice destroyed, at their option, and that they had elected to rebuild, and proceeded to, and did erect another building, conforming in a general way to the building which had been burned, but not substantially like that one or equal in value to it; that what was before alternative and optional in the contract, became fixed and certain and that hence the rule

of damage in such case would be the amount it would take to complete the building by making it substantially like the one destroyed independent of what had already been expended on it. Judgment was reversed, *but the suit was not dismissed;* on the contrary, it was remanded and a new trial ordered, thus, in effect, sustaining the lower Judge in his denial of the motion to dismiss. On the second trial and on the same pleadings, a verdict was rendered in favor of the plaintiff for $3,469.93, which however, was reduced by stipulation of plaintiff's counsel by two-fifths. On appeal the judgment was affirmed, all the judges concurring.

Thos. S. Beals Executor etc. vs. The Home Insurance Co. 36, N. Y. 522, was also an action on a policy for the money indemnity. The defense was that the company had within the stipulated period elected to rebuild, but that the plaintiff refused to permit them to rebuild and had proceeded to the completion of the building he had himself commenced. There was, said the Court, no dispute about the facts as averred in the answer. The plaintiff insisted, however, that notwithstanding these facts he should recover. The Court held that the plaintiff could take nothing from the defendant, *but not because the plaintiff had stated a wrong cause of action.* He could not recover the money indemnity, the Court held, because under the policy the defendant had the option to pay the loss in money or to indemnify the party by furnishing him with a building of like character and equal with the one destroyed; nor could he recover the cost of rebuilding because he had refused to permit the erection of the building by defendant; that giving this option this clause formed part of the contract and when insisted upon, the defendants are entitled to have it enforced as it is a simple exercise of the right given by the terms of his contract and that hence the refusal of the plaintiff to allow the defendants to rebuild, when they had in due time given notice of their election so to do, and his proceeding himself to erect a building on the same premises justified the nonsuit and the judgment was affirmed.

Henry Wynkoop Executor etc. vs. The Niagaria Fire etc. Co. 91 N. Y. 479 was likewise a suit for the money indemnity. The

defense was that the defendant had elected to repair, to which the plaintiff replied that the repairs were insufficient. The Judgment was in favor of the plaintiff and was affirmed; the only contest really in the case being as to the applicability of the arbitration clause in the policy in cases where the election is made; the Court holding that it does not apply.

Elizabeth Helman vs. The Westchester Fire etc. Co. 75 N. Y. 7. In this case, as stated by the Court itself. "The only question involved is whether the plaintiff can maintain the action" which was one for damages for the failure of the insurer to carry out its contract to rebuild, the objection being founded on the stipulation in the policy to the effect that, "loss, if any, payable to Peter Biggs, Jr., mortgagee." It was claimed that Biggs alone could sue, the Court said: "the right to rebuild is as much a part of the contract as the obligation to pay and necessarily modifies the latter."

Fire Association of Philadelphia vs. Rosenthal, 1 Atl., Rep. 303, was a suit to recover costs of making the repairs, the answer having elected to make them and then receded from the election owing to a city ordinance prohibiting the erection of a frame building in the locality where the burnt building once stood. The only question in the case was whether this City ordinance released the insurer from his obligation to rebuild and restored to him the right to pay the money indemnity. The Court held that it did not, saying that "an election once made is irrevocable," and added that "whether the City authorities would permit the building to be rebuilt of wood was a risk which the insurer assumed at the issuing of the policy and which they reassumed at the making of the election.

Hartford Fire Insurance Co. vs. Peebles Hotel Co. 82 F. R. 546, was an action at law against five different insurance companies, in which the plaintiff held policies, to recover damages alleged to have resulted from the failure of the defendants to employ suitable workmanship and materials in repairing a building damaged by fire, the defendants having elected to repair under provisions contained in their policies respectively. "The single question presented by the assignment of errors," said the Court, "as that there was a misjoinder, and the contention is that the de-

fendant's right of action was against each company simply for a breach of its contract to repair and rebuild. "This case, therefore, has not the slightest application to the question under discussion.

In the second place we belive that a fair reading of the petition justifies the conclusion that a cause founded on a claim for damages resulting from defendant's breach of its obligation to restore the property, is disclosed. The petition specifically alleges the election by the defendant company and its failure to comply with its obligation thereunder and concludes with the allegation: "that notwithstanding due demand the said Insurance Company has failed to restore the said building or to pay the amount of the loss hereunder." The expression, "loss hereunder," as it appears in this paragraph of the petition may well mean the loss, (or damage) under and resulting from, the defendant's failure to restore the building.

In the third place, and whether from want of precision or otherwise, a cause of action founded on a claim for damages resulting from a breach of the building contract, so called, is not asserted, nevertheless, the defendant, by its answer, brought about the foundation upon which such a cause of action rests. It invited inquiry into and provoked decision on the very question which it now contends may not be considered and may not receive decision, *ed est,* the faithful execution of defendant's obligation to restore the building to its condition before the fire; and necessarily the fixation of the measure of its liability in the event that it has not done so.

In the fourth place whether the action discloses by the petition be for the money or for indemnity or for damages resulting from the breach of defendant's obligation to restore the building, it is in either event maintainable, forasmuch as the assured has the option, when the election to replace has not been faithfully fulfilled to sue either for the money indemnity named in the policy or for damages.

Mr. Joyce in his admirable work on Insurance says:

"It would seem that by fair compensation contracts of the character here considered must mean not that a mere election to rebuild, or repair, such rebuilding or repairs not being properly

made, or being unreasonably delayed or not prosecuted, would be sufficient to change the insurance policy into a building contract, so that the latter would supercede and cause the former to cease to exist. The mere agreement that the payment may, if insurers so elect, be made in that way should be held to have reference solely to a fulfilled obligation. In the insurance contract he held one of good faith between the parties, its obligations should be carried out with that view. We believe, therefore, that if the insurer through unreasonable delay, fails to complete the rebuilding repairing or replacing, or the work is not prosecuted or is difficult or defective, the contract of insurance is not converted into a building contract to the extent of compelling assured to seek his remedy by way of damages alone, and that he is bound to sue for the failure, although he may so elect, but has a right to bring his action for the loss under the insurance contract. The insurer, however, should be entitled to the present value of such repairs as are made and as are of substantial benefit to the assured, or for deductive for labor and material on account of the partial repairs. "Joyce on Insurance Vol. 4 Sec. 3163 p. 3109. See to same effect Harkins, vs Hamilton etc. Insurance Co. 5 Gray, (Mass.) 432.

In the fifth and last place, and conceding, *argumendo,* that the petition did not state the proper causes of action, nevertheless the cause of action which defendant contends does exist, and which should have been brought, was fully established by evidence received without objection.

The character of the action, therefore, is to be determined rather by the evidence, unobjected to, than by the averments of the petition. "If a party mistakes his right in the petition, but offers evidence which clearly establishes it, the error is cured by evidence establishing it, if, when offered, it is not objected to." Bryan, vs. Moore, 11 Martin 26.

"The admissibility of evidence given of facts not alleged in the petition should be objected to when offered and the point received; otherwise it will be considered as if it had been responsive to an allegation in an amended petition filed with consent of the opposite party." England, vs. Grisson 15 A. 304.

"Evidence admitted without objection will cure defective pleadings." 47 A. 1596. "One who introduced evidence which we might exclude must abide its effect. 44 A. 327; 46 A. 1372; 51 A., 1299; 51 A, 295; 33 A., 1091.

For these reasons we consider that no cause of action to be without merit, and as the facts of the case on the merits are overwhelmingly in favor of the plaintiff, the Judgment appealed from is affirmed.