Rose *v.* Standard Trailer Company Inc., (et al., Appellants).

Argued April 14, 1943. Before KELLER, P. J., BALD-RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*Russell M. Orcutt,* with him *F. C. Kiebort, Jr.,* in

propriae personae, appeal No. 150, and for appellant, appeal No. 107.

*Walter J. McClintock,* with him *John A. Bolard,* for appellee.

OPINION BY RHODES, J., July 22, 1943:

These two appeals relate to questions arising from the first and final account of the receiver of defendant company, who had been appointed by the court below. They will be considered separately in this opinion.

No. 107, April Term, 1943. Appeal of Erie Concrete and Steel Supply Company.

The first complaint of appellant is to the action of the court below in dismissing its exceptions to the amount of compensation allowed to the receiver. In his account the receiver claimed a fee of $3,150 for services extending over 21 months at $150 per month. The account showed a balance for distribution of $6,183.94, which, after payment of the expenses of the receivership and the preferred claims and allowance for the above fee, left a balance of $872.83 for distribution to common creditors. This represented a dividend of .0422. As a result of appellant's exceptions and the proceedings pursuant thereto, the account, as ultimately restated by the court below, shows a balance for distribution among common creditors of $2,397.13, or a dividend of .1095. The increase is due in part to a reduction of $300 in the receiver's compensation— $2,850 instead of $3,150. The former amount was allowed by the court below based on the same monthly rate of remuneration claimed by the receiver, but the period was shortened by two months because the receiver who had been appointed on December 27, 1937, did not qualify by filing his bond until January 17, 1938, and filed his first and final account on August 23, 1939. The receiver had claimed from the date of his appointment until September 1, 1938.

Two phases characterize the receivership. Under the decree appointing him, the receiver was authorized to operate the business. On August 22, 1938, he filed a petition wherein he stated that he was "now convinced and now reports to the court that said business cannot be continued and operated at a profit but must be closed out and liquidated ......" On September 19, 1938, the court below directed the receiver, inter alia, to liquidate the assets of the company. At this point operation of the business by him terminated, and the second phase, that of liquidation, began. Under the circumstances, it would seem that fairness to the creditors as well as to the receiver requires a different measure of compensation according to the type of services rendered during the two periods.

In *Com. et al. v. Traders & Mechanics Bank of Pittsburgh*, 268 Pa. 526, at page 529, 113 A. 186, at page 188, it was said: " 'The allowance to a receiver is largely a matter for the court whose officer he is, and with which an appellate court will interfere only to correct an abuse of discretion ...... Such a finding will not be reversed by an appellate court except on a clear proof of error.' "

In *Schwartz v. Keystone Oil Co.*, 153 Pa. 283, at page 287, 25 A. 1018, at page 1019, the general principles governing the fixing of a receiver's fee are stated as follows: "The considerations that should be controlling with the court are the time and labor needed, not necessarily the time and labor expended, in the proper performance of the duties imposed; the fair value of such time and labor measured by the common business standards; the degree of activity, integrity and dispatch with which the work of the receivership is conducted."

When specific objection has been made to the amount of a receiver's compensation, the burden is upon him to show that the amount claimed is reasonable, the nature

of the services rendered, and the fair value of the time and labor required by such services. *Com. ex rel. v. Monongahela Valley Bank of Duquesne,* 239 Pa. 254, 258, 86 A. 719. In the case at bar the receiver read into evidence an account of his activities, apparently kept in the form of a diary. It began December 27, 1937, and continued in somewhat detailed form until some time in November, 1938. Thereafter the memoranda are of a more general nature. The actual time consumed did not appear. The receiver was giving only part time to his duties throughout the period of his appointment, but during the initial period the record indicates that the business received his attention on most of the working days of each month. His own testimony was that his services so rendered were worth $150 per month. It was neither corroborated nor contradicted. Therefore, we are of the opinion that under all the circumstances an allowance of $150 per month, or a total of $1,200, for the period from January 17, 1938, to September 19, 1938, when the receiver was ordered to liquidate, is reasonable.

However, after the receiver ceased to operate the business, a different rule should apply. "Compensation is made by one of two methods; either a reasonable commission is allowed on the fund, or a fair price for the labor and time employed in its collection": *Schwartz v. Keystone Oil Co.,* supra, 153 Pa. 283, at page 290, 25 A. 1018, at page 1020. Where the duties of the receiver consist in liquidating the assets, a commission on the fund is the more appropriate method of compensation and the one commonly used. In his petition asking leave to discontinue the business and sell the assets, the receiver showed that his total cash receipts to date were $10,789.61. His first and final account reflects total cash received of $18,583.35. The difference, $7,793.74, is obviously the amount which passed through his hands during the period of liquida-

tion.   On this amount we think a commission of 5 per cent, in round figures $400 (actually $389.69), should be allowed, making the total compensation to the receiver $1,600.   When this record is returned to the court below the account will be modified accordingly.

The second question raised in this appeal is one of bookkeeping, not of law.   The receiver had taken credit for $300.90 (*representing material sold to employees*), and set off that amount in his account against what he deemed to be their preferred wage claims.   The court below disallowed the wage claims as preferred, and surcharged the receiver $300.90 accordingly.   Appellant contends that the receiver did not charge himself with the value of the materials sold, although he deducted the set-off of $300.90 from his cash balance; that an additional surcharge of $300.90 is necessary in order to accomplish the purpose sought to be achieved, that is, the addition of $300.90 to the balance available for distribution to common creditors.   The receiver contends that exhibit A-4, totaling $10,006.18 in the account and designated "From collection on accounts and sales of completed materials," includes a charge of $300.90 against the receiver for the sales in question. Although counsel for the receiver have quoted the items comprising the total of $300.90 in their brief, exhibit A-4 has not been printed as part of the record. Therefore we cannot be expected to pass upon the matter. When the record is returned to the court below it should not be difficult to determine whether or not appellant's contention is correct.   If the receiver failed to charge himself with the sales of the material and credited himself with the payment of the wage claims as a set-off, a double credit would naturally result and the amount of the surcharge would have to be doubled also.   If, as he insists, he charged himself with the item $300.90 in his total for collections and sales then the surcharge of $300.90 removes the credit and is correct.

Finally, appellant objects to the allowance of the

claim of C. O. Luce as preferred in the sum of $372.24. Originally, this claim was for storage, office space, and services furnished to the receiver totaling $372.24, plus the maximum allowance of $200 for wages alleged to be due Mr. Luce prior to the receivership. The latter was disallowed and is included in the surcharge of $300.90 discussed above under the second question. The sum of $372.24 is itemized in Luce's claim, which appears in the record as exceptant's exhibit H, and is printed in the margin.[1] The court below in its first adjudication of the receiver's account dated October 30, 1940, disallowed the entire claim of Luce, and surcharged the receiver with a total of $572.24. This action was not disturbed in that court's "Restatement of Distribution" dated January 21, 1941. However, in disposing finally of the exceptions to the adjudication and decree nisi the court below eliminated the surcharge to the extent of $372.24, although the additional $200 for which the receiver had claimed credit as a preferred wage claim was allowed to stand. In explanation of the action the court said: "The evidence

---

[1]

"Statement

Due C. O. Luce                                          Nov. 21, 1938

---

Standard Trailer Co.
W. P. Rose, Receiver,
Cambridge Springs, Pa.
Storage of Materials & Trailer Coaches from
  April 1, 1938 to Nov. 1, 1938—7 mo. [at]
  $15.00 per mo. .......................  $105.00
Office rent, same period [at] $5.00 per mo.  ~~35.00~~  17.24
Supervision of Office, Factory and Sales for
  7 months, (not included in hour rate
  charged for full hours worked in Office
  and Factory—7 mo. [at] $35.00 per mo.  245.00
Work checking records after Nov. 1 .......  5.00

        Total ...........................  ~~$390.00~~  372.24"

shows that the Receiver for a time operated the manufacturing plant of the corporation, during which time one C. O. Luce, became indebted to the Receiver in the sum of $572.24 and the Receiver was indebted to Luce in the sum of $372.24, both accounts being for materials bought and sold in connection with the said operation. A balancing of the accounts shows an uncollected balance in favor of the corporation of $200."

As Luce's claim shows (footnote 1), it is not for materials bought and sold in connection with the operation of the business; on the contrary, as has been said, it is for storage, office space, and personal services alleged to have been furnished to the receiver. Although the claim is dated November 21, 1938, it did not appear in the receiver's books until July 19, 1939. An apparent correction was made in the item for office rent with the result that the claim balanced exactly the amount due to the receiver from Luce for the materials which the latter had purchased. The contention of appellant that Luce failed to prove his claim of $372.24 appears to be well founded. He was hired and paid by the receiver at 70 cents per hour for such services as the receiver required of him. The receiver testified: "Q. Did you employ a superintendent or supervisor? A. Well, Mr. Luce had always taken charge of manufacturing operations in the plant and except that he went on a basis by which he charged for the time he put in after the starting of the receivership, he continued in some part along that same line. Q. I am asking whether you employed him as a superintendent or supervisor? A. What do you mean by superintendent or supervisor? Q. The ordinary meaning of those words. A. You mean on the manufacturing or factory operation, or office or general business? Q. I mean in any capacity, as superintendent or supervisor? A. I would say that he was employed by the Receiver as a superintendent in charge of operations, manufacturing, opera-

tions. Q. Did you agree to pay him a salary as superintendent? A. No I think I could tell by looking at the records, how long he collected a salary, but I think a very short time, two or three weeks after the receivership. Q. Then you employed him there on a salary as superintendent? A. I made an arrangement whereby he would be paid on the basis of hours he put in on the work. Q. And he was to receive no further salary is that correct? A. Well, I don't know as that was definitely stated at the time. Q. Did you have any agreement with him? A. I didn't have any agreement with him, not in writing or anything like that."

There is other testimony of a similar nature. Luce himself does not testify to any agreement on the part of the receiver to pay him $35 per month in addition to his other arrangement or to pay him rent for storage and office purposes. In a letter written by the receiver to J. A. Bolard, Esq., one of his counsel, on June 10, 1938, he stated: "We are under no expense since April first for overhead at the Venango Avenue address, this location having been taken over on that date by Mr. Luce and his associates for their own business. A cooperative arrangement permits the Receiver to house the office equipment and the four unfinished coaches at the Venango Avenue plant without charge.

"As we find sales we employ Mr. Luce or others at hour wages, and Mr. Luce is also being paid an hour or two a day for office work. Mrs. Brown who has looked after the office etc. for a long term is spending a part day on three days a week."

No demand for payment was ever made by Luce prior to the filing of exceptant's exhibit H (footnote 1). There is nothing in the record to show that the items in his claim were necessary to the operation of the business or reasonable in amount. Since the proper evidential basis is lacking, the claim should have been disallowed, and the receiver surcharged in the amount thereof, $372.24.

No. 150, April Term, 1943. Appeal of Russell M. Orcutt and F. C. Kiebort, Jr.

Appellants are the attorneys for Erie Concrete and Steel Supply Company, appellant in No. 107, April Term, 1943. They filed a petition setting forth that, as the result of exceptions taken to the receiver's account by them on behalf of their client and the proceedings pursuant thereto, the fund for distribution to common creditors had been increased from $872.83, representing a dividend of .0422, to $2,804.83, or a dividend of .128. (As finally restated by the court below, after the filing of appellant's petition, the fund for distribution was $2,397.13 permitting a dividend of .1095. This will be increased by at least $1,622.24 pursuant to this court's disposition of appeal No. 107, April Term, 1943, supra, and represents payment of approximately 18 cents on the dollar.) They averred that the increase in the fund for distribution was due to their efforts which had promoted the interests of all creditors, and asked for a fee of $500 out of the fund for distribution. The receiver filed an answer in which he admitted that the services had been rendered and the fund for distribution to common creditors thereby increased to some extent, but denied that appellants' services were in the interest of all creditors, and averred that their services were performed for and pursuant to their representation of a single creditor, who was their client, the Erie Concrete and Steel Supply Company. The reasonableness of the amount was also disputed.

The court below held that appellants were not entitled to an award of counsel fees from the fund, and discharged the rule to show cause which had been granted on their petition. We agree with this. In support of their claim appellants cite *Schwartz v. Keystone Oil Co.,* 164 Pa. 415, 30 A. 297; *Miller v. Myers et al.,* 300 Pa. 192, 150 A. 588; *Harris' Appeal,* 323 Pa. 124, 186 A. 92. These cases are all examples of a fund be-

ing *created* by the services of counsel which inured to the benefit of others, and they are so characterized by President Judge KELLER in *Smaltz' Trust Estate,* 142 Pa. Superior Ct. 463, 467, 17 A. 2d 455. In the instant case, there has been no fund created by appellants. The fund before the court was brought there by its own officer, the receiver. The efforts of appellants on behalf of their client were directed to securing a *distribution* of that fund which would reduce the amount allocated to preferred claims by the receiver, and thus increase the balance available for common claims. The fund available for the payment of all claims is the same now as it was at the time the receiver's account was filed. Appellants' efforts have not brought new money into it; they have merely reduced the amounts payable to some recipients with the result that others will receive more. Closely analogous to the present case and governing it in principle is *Com. ex rel. v. Order of Solon,* 193 Pa. 240, 44 A. 327. There the matter came before our Supreme Court on appeal from the dismissal of exceptions to the report of auditors appointed by the court below to distribute the fund in the hands of the receiver of the defendant corporation. The attorney for some of the creditors acting for his clients successfully objected to the payment of claims to the amount of $50,000. The auditors awarded him a substantial fee out of the fund. Exceptions were filed to this award by other creditors whom he did not represent. In reversing the decree of the court below so far as it dismissed these exceptions the Supreme Court said, speaking through Mr. Justice DEAN (193 Pa. 240, at page 242, 44 A. 327, at page 328) : "It is somewhat difficult to understand, in view of the admitted facts, on what grounds, legal or equitable, this claim was allowed. Mr. Quincy [the attorney] had no claim at law against the certificate holders who did not retain him; who did not even impliedly request his professional services. Will

equity sustain the award? It is conceded that the distribution of a fund in the hands of a receiver or other trustee is to be governed by equitable principles; and where the attorney of one of several parties, all equally interested, secures a fund which would otherwise have been embezzled or lost, and all share equally in the distribution, it is but equitable that all should share in the expense which produced the fund, although but one moved in the matter. But there is no such case here. The commonwealth, by her attorney general, prosecuted the case to judgment of ouster; it was the imperative duty of the court entering the judgment to put the funds into the hands of a trustee, which it immediately did, by appointing a receiver who qualified. The fund was then beyond peril; it was in possession of the court by its own officer ...... But, it is urged, that Mr. Quincy [the attorney], from his argument, and some evidence produced by him, induced the auditors to reject many thousand dollars of spurious claims on the fund, and thereby all holders of certificates, whether purchased by or originally issued to them, were benefited. Admit it; but he did only what he was bound to do under his professional obligation to his own clients; if he had done less, he would have failed in duty to them; in this particular he owed no duty to other claimants and performed none to them, although an incidental benefit may have resulted to them from the performance of a duty to his own clients. This, however, gives him no claim on them for contribution to his compensation." Justice DEAN, as said in *Harrison's Estate*, 221 Pa. 508, at page 509, 70 A. 827, "points out the distinction between securing or raising a fund—the actually bringing it into existence, and the mere dealing with a fund which is at the time safely in the custody of the court." The concluding paragraph of the opinion in *Harrison's Estate*, supra, 221 Pa. 508, at page 510, 70 A. 827, effectively disposes of appellants' claim in the case before us: "We are unable in any way

to distinguish the present case in principle from that just cited. The fund was in the hands of the court, and in no jeopardy except from possible mistake of the court in dealing with it; and in that event nothing more was required for the correction of the error than the filing and argument of proper exceptions in the court below, and, if necessary, following the matter to the appellate court. There is no evidence that anything out of the ordinary routine of legal procedure was required. The appellant was protecting her own interest, and although it may be that by means of her efforts others were benefited also, yet we know of no rule of law which will entitle her to be reimbursed for payment of counsel fees expended by her in order to protect her own interest. The services she rendered to the common interest were voluntary, and however beneficial they may have been, no legal charge for them can be sustained, in the absence of a contract of employment, either expressly made or superimposed as a matter of law or equity upon the facts."

In appeal No. 107, April Term, 1943, the decree is reversed to the extent indicated herein, and the record is remitted to the court below, with direction to restate the account and to make distribution in accordance with this opinion; costs to be paid from fund for distribution.

In appeal No. 150, April Term, 1943, all the assignments of error are overruled, and the decree as it relates to those assignments is affirmed; costs to be paid by appellants.