## Kauffman v. Hunt et ux.

*Llewellyn E. Lloyd*, for petitioner.

*Frank P. Barnhart* and *Charles A. Greer*, for respondents.

McKenrick, J., September 15, 1948.—Josiah J. Kauffman died intestate in 1945, leaving to survive him three children, Walter Kauffman, Ida Hunt and Elsie Hunt. Prior to 1933, Josiah J. Kauffman owned a piece of real estate in Upper Yoder Township, Cambria County, Pa., and on March 25, 1933, conveyed it to Ida Hunt and her husband, Blair Hunt, for a nominal consideration. This deed was not recorded until 1937. After the death of the father, a dispute arose

among the surviving children concerning the ownership of the property. Walter Kauffman contended that the conveyance was subject to a trust. Ida Hunt and Blair Hunt on the other hand contended that the conveyance was absolute. The dispute finally resulted in a proceeding in equity brought by Walter Kauffman against Ida Hunt and Blair Hunt, her husband, to establish a trust of the property in their hands. Attached to the bill of complaint was a copy of an alleged trust agreement which plaintiff, Walter Kauffman, contended was signed by defendants, Ida Hunt and Blair Hunt, and by the grantor, Josiah J. Kauffman. By the terms of this agreement, defendants engaged to reconvey the property to the grantor at any time and, in the event of grantor's death before reconveyance, the grantees were to pay the debts and funeral expenses of their father and divide the remainder of the estate among the three children, subject to certain charges against the shares of plaintiff, Walter Kauffman, and his sister, Elsie Hunt. Plaintiff, in his bill, asked for a decree declaring defendants to be trustees of the title in accordance with the provisions of the agreement.

The answer to the bill denied the existence of the agreement as set forth in the bill and claimed that the property was the sole and absolute property of defendants, Blair Hunt and Ida Hunt, in accordance with the terms of the deed, and asked that the bill be dismissed. At the hearing of the equity proceedings, testimony was taken in support of the allegations of the bill as well as the averments of the answer. The chancellor found as facts that the agreement was in fact signed by the parties as set forth in the copy attached to the bill of complaint and entered a decree declaring Ida Hunt and her husband, Blair Hunt, trustees of the real estate in question and directed them to comply with the terms of the trust agreement. Subsequent to

the proceedings in equity, an offer of purchase of the premises was received, said purchase price amounting to $14,600. As a result of the decree in equity, the moneys derived from the sale of the real estate will be divided among the heirs subject, however, to the payment of certain charges against the estate.

Llewellyn E. Lloyd, Esq., appeared in the equity proceeding as counsel for plaintiff, Walter Kauffman, filed the bill in equity and conducted the proceedings whereby it was judicially determined that the trust agreement was in existence and, therefore, the property belonged to all the heirs instead of to one of the heirs and her husband, who were the grantees in the deed, and respondents here. Said attorney presented a petition asking that counsel fees be allowed him out of the moneys to be paid to the trustees as consideration for the sale of the trust property. Blair Hunt, Ida Hunt and Elsie Hunt, respondents in the rule, filed an answer denying the liability of the estate and averring that any fees that are due to counsel were payable by Walter Kauffman, who employed petitioning counsel. At the argument on the petition and answer, it was contended by Llewellyn E. Lloyd, petitioner, that his claim for payment for services rendered was within the class of cases whereby counsel fees could be determined by the court out of the estate created. Counsel for respondents contended that there is no authority in the statute law or otherwise for the payment of fees under the facts in this case. Both parties to the controversy have submitted briefs and the matter is before us for consideration and disposition.

We have read the cases cited by counsel and are of opinion that even in the absence of statutory authority, courts of equity under certain circumstances may allow fees. In Hempstead et al. v. Meadville Theological School, 286 Pa. 493, it was held that "where the services of counsel protect a common fund for ad-

ministration or distribution under the direction of the court, or where such fund has been raised for like purpose, it is liable for costs and expenses including counsel fees incurred; and such is the case even though the protection given or the raising of a fund results from what may be properly termed adversary litigation".

It is to be noted, however, that in this case counsel fees were not permitted for the reason that the controversy arose out of managerial acts of the trustees and not the preservation of a property or fund. However, the principle laid down in this case is, we believe, a governing one. Counsel for respondents have cited numerous cases to support the theory that counsel fees are not chargeable to the estate. It will be observed also that in the cases cited (Commonwealth of Pennsylvania ex rel. et al., v. Order of Solon, 193 Pa. 240; Rose v. Standard Trailer Co., Inc., 153 Pa. Superior Ct. 234), and other cases referred to, the fund before the court for distribution was already in existence and the efforts of counsel were directed to certain aspects of distribution. In the Solon case, supra, an attorney for some of the members succeeded in having a large number of claims rejected whereby the balance for distribution was increased and certain claimants benefited thereby. In the Standard Trailer Co. case, the court said that no fund was created by appellants. The fund was already before the court, having been brought there by the receiver. In the Smaltz' Trust Estate, 142 Pa. Superior Ct. 463, the efforts of the attorney asking compensation from the trust fund merely paralleled and supplemented the actions of the trustees and no special need existed for those services. Therefore, no compensation was allowed. On the contrary, in the case of Harris's Appeal, Jacoby's Appeal, 323 Pa. 124, counsel fees were allowed. In that case, a fund was created by the

attorney who represented a mortgagor of property in condemnation proceedings. It was there said in an opinion by Maxey, J., in quoting a syllabus from Trustees v. Greenough, 105 U. S. 527, "One jointly interested with others in a common fund and who in good faith maintains the necessary litigation to save it from waste and destruction and secure its proper application, is entitled, in equity, to reimbursement of his costs as between solicitor and client, either out of the fund itself, or by proportional contribution from those who receive the benefits of the litigation".

The rule deducible from the authorities, as we view them, is this: Where the fund out of which attorneys claim compensation is already in existence and before the court for distribution and such fund was created before the services for which claim is made were rendered, and where the only result of the litigation is to change the order or rate of distribution, attorneys must look to their own clients for their compensation. On the contrary, where the fund has been created and brought into being through the efforts of the attorney and without whose efforts there would have been no fund for distribution, the attorneys have an equitable charging lien upon the fund and the court may properly award compensation out of the fund. The doctrine which we here express is supported by a number of authorities, among them Harris's Appeal, supra; Hempstead v. Meadville Theological School, supra; Miller v. Myers, 300 Pa. 192; Crawford's Estate, 307 Pa. 102, and Smaltz' Trust Estate, 142 Pa. Superior Ct. 463. It is contended, however, by respondents that the present case is not within the rule relating to the creation of a fund, but merely a dispute between members of decedent's family concerning title to his real estate. Quoting from brief filed by respondent's counsel:

"The real estate was the bone of contention and the title depended upon whether or not a trust existed. The subject matter was not created but was in existence and the only fund was such as resulted from the necessity to sell to carry out the trust. The action was an adverse one, and plaintiff's counsel did only what was necessary to establish his client's claim and protect his interests."

In view of this contention, it will be well to reëxamine the facts in this case. Respondents, Blair Hunt and Ida Hunt, claimed ownership of the land by virtue of an absolute deed from Josiah J. Kauffman; they denied that there was any trust relationship between themselves and Josiah J. Kauffman or that they had signed any trust agreement. When they proposed an amicable settlement of the controversy by permitting Walter Kauffman, plaintiff, to share in the distribution of the fund to be derived from the sale of the land, it was to avoid litigation and not because they recognized any legal claim of Walter Kauffman to a share of the property. Further, they proposed to sell the land to the brother of Blair Hunt, who was married to Elsie Kauffman, for approximately $9,500, notwithstanding that Walter Kauffman had procured a purchaser at a higher price, thus reasserting their claim of absolute ownership. Because Walter Kauffman objected to the proposed sale, the offer to include him in the distribution was withdrawn. Walter Kauffman then instituted the equity proceeding and as a result of the efforts of his attorney, there is now before the court for distribution the sum of approximately $14,600. That fund was not in existence for distribution in the estate of Josiah Kauffman until the efforts of attorney Lloyd created it. If the contention of respondents had prevailed, there would not have been a single dollar in the estate of Josiah Kauffman for distribution to heirs, creditors, or other claimants. The

land which counsel argues was already in existence, was in the name of Blair Hunt and Ida Hunt and if their claim of absolute ownership had been successful, they would have received for themselves the entire proceeds to the exclusion of Walter Kauffman and Elsie Hunt. Under respondents' claim of ownership, any moneys paid to any other heirs of the Josiah Kauffman estate would have been mere gratuities without legal claim or right. It is true the land, as acreage, was there but it was necessary to convert it into money in order to create a money fund. In the absence of the proceeding in equity, the land would have remained in the control of Blair and Ida Hunt, who could have farmed it themselves or have sold it as they chose. Because of the equity proceeding and the consequent decision in favor of plaintiff, the fund arising out of the sale of the land has been brought into the estate of Josiah Kauffman. Instead of absolute owners we now have trustees who unsuccessfully attempted to repudiate their trust and claim the fund as their own. It is mere sophistry to say that because the land which produced the fund was in existence at all times, the proceeds of that land when sold has not been transformed into a new fund, so far as the estate of Josiah Kauffman is concerned.

We think that we have demonstrated that the fund which is now in the hands of the trustees for distribution under the terms of the agreement was created by the efforts of claimant's attorney. Without his efforts, there would have been no estate of Josiah J. Kauffman to administer and the proceeds of the land, if and when sold, would have been appropriated entirely by respondents to the exclusion of all other claimants under the trust agreement. We are satisfied, therefore, that this fund is such a fund as the decisions have recognized as being liable for the payment of the fees of the attorney who brought it into existence and that,

therefore, the attorney is entitled to payment out of that fund. It has also been contended here that Elsie Hunt, who had no part in the controversy between Walter Kauffman and Ida Hunt and Blair Hunt, will be penalized by having to pay from her share the fees of an attorney she did not employ. If the claim to absolute ownership on the part of Blair Hunt and Ida Hunt had prevailed, Elsie Hunt, who now shares by reason of the trust, would have received nothing unless the same gratuitous offer had been made to her that was made to Walter Kauffman, her brother, and later withdrawn. In the absence of some arrangement between Blair Hunt, Ida Hunt and Elsie Hunt, she would never have shared in any part of the estate. She has, therefore, been benefited by the services of attorney Lloyd and without any effort in her own behalf is now accorded legal status entitling her to one third of the fund instead of having to rely upon the generosity of Blair Hunt and Ida Hunt.

It is also objected that respondents will be penalized if attorney Lloyd is to be paid out of the fund and further that defendants in the equity proceeding, respondents here, have not gained but have lost as a result of the suit. We do not know that respondents are in a position to complain much about the situation. If their contention had been sustained, they would have received the entire estate. Certainly, they did everything possible to procure a decision favorable to their contention. This court was of the opinion that the trust agreement was executed and it is operative in the distribution of any fund derived from the sale of Josiah Kauffman's land. If the trust agreement was in fact executed, then Blair Hunt and Ida Hunt have not lost but will receive all that they were entitled to receive in the first instance. It was their claim to sole ownership and their denial of the trust arrangement that made necessary the law suit for which the

attorney now claims to be paid. If respondents had admitted the existence of the trust agreement and observed its conditions, no legal proceedings would have been necessary to establish the trust and no counsel fees would have been incurred except those involved in the ordinary settlement of the estate in the orphans' court. Therefore, we do not think that either Elsie Hunt or respondents have any valid reason to complain about the payment of attorney's fees.

The next question before us is the amount of the fee which should be paid by the estate out of the fund. We are familiar with the services rendered by petitioner Lloyd. The equity case was well handled on the part of petitioner here and was expertly, though unsuccessfully, defended by counsel for respondents. The decision was favorable to the contention of plaintiff in the equity proceeding and we have in existence a new fund of $14,600 less, however, certain deductions for moneys expended on behalf of the estate. In partition proceedings under statute, the court may allow a reasonable counsel fee and the usual fee is five percent of the amount involved. If we were to apply the same rule to this proceeding, the attorney's fee should be $750, approximately five percent. We do not think that it is an unreasonable amount considering the time and services involved in the preparation and trial of the case as well as in the preliminary and subsequent negotiations incidental to the proceedings.

We, therefore, make the following decree:

### Order

Now, September 15, 1948, counsel fees in the sum of $750 are awarded to Llewellyn E. Lloyd, to be paid by the trustees out of the funds in their hands arising from the sale of the real estate of Josiah J. Kauffman, deceased.