# Hempstead et al. *v.* Meadville Theological School, Appellants.

*Attorneys' fees—Costs of case—Payment of fees—Raising or preserving—Common fund—Trustees theological school.*

1. As a general rule in Pennsylvania each party to adversary litigation is required to pay his own counsel fees.

2. There is no law in Pennsylvania which warrants the payment of counsel fees as "costs of the case."

3. Where the services of counsel protect a common fund for administration or distribution under the direction of the court, or where such fund has been raised for like purpose, it is liable for costs and expenses including counsel fees incurred; and such is the case even though the protection given or the raising of a fund results from what may be properly termed adversary litigation.

4. Where many persons have a common interest in a trust property or fund, and one of them, for the benefit of all, at his own cost and expense, brings suit for its preservation or administration, the court of equity in which the suit is brought will order plaintiff to be reimbursed his costs and expenses, including counsel fees, from the property of the trust, or order those benefited to contribute proportionately toward that expense.

5. But the court will never, under its powers, order counsel fees to be paid where no fund or property is before the court for administration or distribution, and especially is this the case where the purpose of the litigation is to restrain and control the managerial acts of trustees or directors.

6. Where an equity suit is brought to restrain the trustees of a theological school in Pennsylvania from transferring its educational activities to another state, and to restrain the transfer of its property to a corporation of such state, and the suit results in restraining only the transfer of the property to the other state, counsel fees will not be allowed out of the funds of the school to the plaintiffs in the suit.

7. The result of such suit was to control the managerial acts of the trustees of the school, but not in any sense to preserve the property or fund, as it appeared that the property would have been as safe in the other state as in Pennsylvania.

Argued May 3, 1926. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 164, Jan. T., 1926, by defendants, from order of C. P. Crawford Co., May T., 1924, No. 1, making absolute rule to pay counsel fees, in case of E. A. Hempstead et al., Trustees of Meadville Theological School et al., v. Meadville Theological School, and Franklin S. Southworth et al. Reversed.

Rule to pay counsel fees in suit in equity. Before PRATHER, P. J.

The opinion of the Supreme Court states the facts.

Rule absolute. Defendants appealed.

*Error assigned* was, inter alia, order, quoting record.

*Charles H. Strong,* with him *John O. McClintock* and *Walter J. McClintock,* for appellants.—The general rule requires that each party to the litigation pay his own counsel fees. Attorneys' fees are not allowable in the absence of a statute or in the absence of some agreement or stipulation specially authorizing the allowance thereof; and it has been held that the rule applies equally in courts of law and in courts of equity: Winton's App., 87 Pa. 77; Tarr's Est., 10 Pa. Superior Ct. 554; North Penna. R. R. Co. v. Adams, 54 Pa. 94; Grubb's App., 82 Pa. 23; Com. v. Meyer, 170 Pa. 380; Kaufmann v. Kirker, 22 Pa. Superior Ct. 201; Smith v. Trust Co., 215 Pa. 413; DeWitt v. Bank, 243 Pa. 534; Whitney v. Boro., 266 Pa. 537; Com. v. Wilson, 4 Pa. D. & C. 302; Biles' App., 119 Pa. 105; DeCoursey v. Johnston, 134 Pa. 328.

*Frank J. Thomas,* with him *Paul E. Thomas,* of *Thomas & Thomas,* and *Otto Kohler,* for appellees.— Where services are rendered to protect a common fund or common property, or to save it from destruction or diversion, the fund or interests so protected are, under direction of the court, liable for reimbursement for costs and expenses incurred for such purposes: Weed's Est.,

McGinnis App., 163 Pa. 595; Weed's Est., Bank's App., 163 Pa. 600; Perkin's App., 108 Pa. 314; Manderson's App., 113 Pa. 631; Trustees v. Greenough, 105 U. S. 527; Hobbs v. McLean, 117 U. S. 567.

The authorities clearly show that the bringing of a fund into court is not the controlling, or, indeed, a necessary feature in allowing for protecting the property: Grant v. Lookout Mountain Co., 93 Tenn. 691; Forrester v. Boston & M. Con. C. & S. M. Co., 29 Mont. 397; Colley v. Sapp, 44 Okla. 16.

OPINION BY MR. JUSTICE KEPHART, May 26, 1926:

As a general rule in Pennsylvania each party to adversary litigation is required to pay his own counsel fees. As stated by GIBSON, J., in Alexander v. Herr, 11 Pa. 537, "if clients could pay attorney's fees out of the pockets of their opponents, they would pay most liberally." Nor is there any law in Pennsylvania which will warrant the payment of such fees or expenses, incident to the preparation for trial, as "costs of the case." In the absence of express statutory authority, counsel fees cannot be allowed from the adverse party: Winton's App., 87 Pa. 77, 85; Com. v. Meyer, 170 Pa. 380, 384; Lawrence v. Smith, 215 Pa. 534; Whitney v. Jersey Shore Boro., 266 Pa. 537; Moats v. Thompson, 283 Pa. 313, 322; Kaufmann v. Kirker, 22 Pa. Superior Ct. 201. "It is beyond the power of the court in the ordinary adversary proceedings......to warrant the payment as costs in the case of fees of counsel for professional services......It would be a usurpation of legislative function to allow, as between party and party, charges to which no statute has given the character of costs": Whitney v. Jersey Shore Boro., supra.

There are well recognized exceptions to this rule. Where the services protect a common fund for administration or distribution under the direction of the court, or where such fund has been raised for like purpose, it is liable for costs and expenses, including counsel fees

incurred. This is the case even though the protection given or the raising of a fund results from what may be properly termed adversary litigation: Weed's Est., 163 Pa. 595, 600; Perkin's App., 108 Pa. 314; Manderson's App., 113 Pa. 631; Trustees of Int. I. Fund v. Greenough, 105 U. S. 527. All of our cases bearing on the question, the facts concerned, the administration of estates, insolvent estates, a common fund in existence or to be raised, in which the parties interested were directly or indirectly benefited as creditors or as trustees of the fund which ultimately reached designated parties, are illustrated by the following cases:

Thus Freeman v. Shreve, 86 Pa. 135, 138, concerned an estate for administration where a fund was in existence. In Manderson's App., 113 Pa. 631, a trustee employed counsel to defend a trust estate from illegal claims. In Weed's Est., 163 Pa. 595, certain creditors of an insolvent estate employed counsel to set aside a conveyance and judgments confessed by a trustee in fraud of creditors. In Perkin's App., 108 Pa. 314, there was a fund before the court for distribution.

On the other hand, in Whitney v. Jersey Shore Boro., supra, there was a bill in equity to restrain the annexation of a certain part of a township to the borough. Persons objecting to the annexation employed counsel. The court allowed the attorney counsel fees. We held that the order for counsel fees was improper, on the ground that this was an ordinary adversary action.

In no case have we considered the facts as here presented, though other jurisdictions have passed on this question on broader grounds. The leading case is Trustees v. Greenough, 105 U. S. 527. That was an appeal of bondholders to set aside fraudulent conveyances of a fund pledged to the payment of their bonds. All bondholders were financially benefited by this act as well as the corporation itself. It saved the fund from waste. Counsel fees were allowed.

In Central R. R. v. Pettus, 113 U. S. 116, an effort was made to place property of the corporation out of its hands in fraud of unsecured creditors. The latter employed counsel who succeeded in establishing a lien against the property. The court held that a counsel fee was proper in that case under the same reasoning as in the preceding case. Meeker v. Winthrop Iron Co., 17 Fed. 48, was a suit by minority stockholders to cancel a lease fraudulently made. On being successful, they were allowed counsel fees under the principles of Trustees v. Greenough, supra. So, too, in McCartney v. Guardian Trust Co., 290 Fed. 64, where an element of fraud existed. Of like effect is Decatur Mineral & Land Co. v. Palm, 113 Ala. 531, 21 So. 315, where bad faith and fraudulent acts of the officers were charged.

In Grant v. Lookout Mountain Co., 93 Tenn. 691, 27 L. R. A. 98, the directors illegally conveyed all the corporate property with the purpose in view of depriving the minority stockholders of financial benefit in the further continuance of the corporation. They were enjoined from making this conveyance on no other ground, so far as appears from the bill, than that of constructive fraud. In Colley v. Sapp, 44 Okla. 16, 142 Pac. 1193, 1194, the court said, "Wherever the corporation itself is directly injured......and the action is to undo fraud and breaches of trust already committed and restore to the corporation assets thereby wasted, a stockholder is entitled to reimbursement out of corporate assets for [his] expenses, including reasonable counsel fees." Generally these cases have held that where many persons have a common interest in a trust property or fund, and one of them, for the benefit of all, at his own cost and expense, brings suit for its preservation or administration, the court of equity in which suit is brought will order plaintiff to be reimbursed his costs and expenses, including counsel fees, from the property of the trust, or order those benefited to contribute proportionately toward that expense.

Our cases, as they relate to a fund raised or to the protection of one, are in accord with these authorities. It is true, in describing the subject-matter of the controversy or the purpose of the litigation where fees are allowed, we use expressions such as "for the common benefit of all the parties" (Winton's App., 87 Pa. 84), later restricted to "the actual financial benefit of all the parties" (Whitney v. Jersey Shore Boro., 266 Pa. 537), and have under extraordinary circumstances awarded compensation to counsel of a losing party because he was compelled to litigate or had sufficient reason to do so. See Freeman v. Shreve, 86 Pa. 135, 138. We have never, under our equitable powers, ordered counsel fees where no fund or property was before the court for administration or distribution; especially where, as here, the purpose of the litigation was to restrain and control the managerial acts of trustees or directors. There may be cases in which restraining orders issued where fraud or dishonest motives actuated such officers in the disposition of property. In such cases, fees would be properly allowable, the property involved being before the court for administration, but this condition is not present in this case.

The reasons for not ordering professional services to be compensated from property, real and personal, where the litigation is to restrain the administrative acts of trustees and officers, are obvious. There is nothing before the court which enables it to give effect to such order. To enforce a decree under these circumstances would be to reach out and take property not within the court's control. While it is true the resultant effect of the litigation may be to preserve property in a certain sphere, the motives of those in charge, who would otherwise dispose of it, being in good faith and for the best interest of the company, the proposed action is at best an error of judgment or of legal right; the labors of those who are successful in restraining the action must be placed on a plane beyond the reach of professional serv-

ices, as a charge against the property or institution whose original status they preserve.

Appellee, however, claims the case is clearly within the reasoning of the rule that the fund has been brought before the court for administration or protection.

The Meadville Theological School conducted its affairs in Meadville, Pennsylvania. By resolution, it was proposed to move the institution and its educational activities to Chicago. It was tentatively arranged that the Pennsylvania property be transferred to the Illinois corporation to. be applied to the use of the school, in the instruction in religion and a preparation of candidates for the Christian Ministry. The court below and this court state "that the proposed removal would result advantageously to the prosecution of the purposes for which the......school was established." Counsel for the moving trustees said, "We have no doubt but that the majority trustees are sincere and honest in their efforts." Some of the members of the Unitarian faith and five dissenting trustees, desirous of keeping the institution in Meadville, took action to restrain this removal and the turning over of property and assets to the Illinois corporation. The court below granted a restraining order preventing the activities of the school from being moved to Chicago, as well as the transfer of the property. An appeal was taken to this court and the decree of the court below was modified: Hempstead v. Meadville Theological Society, 284 Pa. 147. It restrained the transferring of the assets of the school to another person or corporation to enable the latter to carry on any of the purposes of the corporation, and from managing and directing its strictly corporate business in any other place than the City of Meadville, but did not prevent the board from transferring and conducting its educational activities to and in the City of Chicago. While the litigation prevented appellants from moving its property out of the jurisdiction of Pennsylvania, it established their legal rights in the matter. When the

case was heard in this court, the trustees were permitted to amend their pleadings by stipulating that the transfer of the assets to the Illinois corporation was only an alternative, that they did not propose at any time to commit an act contrary to the laws of Pennsylvania. What they desired to do was to remove their educational facilities to Chicago in consonance with the laws of this State. It is clearly evident that the action of the trustees was prompted by the highest motives. Even had the act of transfer of property been entirely legal, it must be accomplished under our laws. They are very broad and it is difficult to understand, with this property in existence, how such transfer could be accomplished in a way that would deprive the old school of its rights, though the parties in both were identical. While there may be merit in the suggestion that the successful trustees should not be compelled to bear the burden of litigation that prevents a corporation from doing ultra vires acts, the major portion of these acts are beneficial to the corporation. The fact that an endowment fund of $1,000,000 and property of $150,000 must be administered in the City of Meadville, is of no financial interest to them or the entire membership of the corporation any more than the preservation of a particular doctrine of the church would be of financial benefit. There was no disruption, or attempted disruption, waste or embezzlement of the property or of the trust funds. While under such circumstances the visitorial powers of this State might have been hindered, the presumption is that the laws of Illinois are as effective in this respect as ours. There is not the slightest allegation or proof of fraud. Even in those states where the payment of counsel fees have been authorized there was an element of dishonesty that amounted to fraud or actual fraud present in the disposition of the subject-matter of the litigation. It may be a serious handicap to the business affairs of this school to keep this property in Meadville when its educational work is being carried on in Chicago. It was

solely because the law commanded it to be done that the order of the court was made. But the attempted transfer of property to the Illinois corporation, if it can be so called, to be used for the same purpose, would not be a dissipation of the property in any sense of the word. The transfer might have been to its very great benefit, certainly not to its disadvantage. The purpose of the old school and the trust created thereunder could have been carried on as effectively under that arrangement as under the one which was ordered by our prior decision. We so state to elucidate the question of the purpose of that and this litigation. Its effect was to control the managerial acts of the trustees. It was not to preserve property or a fund, and consequently under no stretch of our law could it be brought within the scope of the cases allowing counsel fees. The court below was clearly in error in ordering the school to pay. There is no doubt but that these gentlemen earned the money, and, in all fairness to them, as a result of the litigation clarifying the legal standing and rights of the parties, they should be paid, but not from the school.

The decree of the court below is reversed at cost of appellant.