Trasoff's Appeal.

Argued September 29, 1939.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, Rhodes and Hirt, JJ.

*Aaron Trasoff,* in propria persona, appellant.

*Paul Maloney,* with him *Evans, Bayard & Frick,* for appellee.

OPINION BY CUNNINGHAM, J., December 19, 1939:

Appellant, Aaron Trasoff, Esq., is a member of the bar of the County of Philadelphia and has appealed from an order of the court below discharging his rule to show cause why he should not be allowed a counsel fee out of a surcharge of $552 against Tradesmen's National Bank and Trust Company, the accountant in the above entitled proceedings. The surcharge was the result of numerous exceptions taken to the account, and prosecuted, by appellant; the amount of the fee suggested in his petition was $250.

It is not necessary, for the purposes of this appeal, to recite the complicated transactions which led up to the voluntary filing of the account. It will be sufficient to note that at the time there were outstanding, in the hands of a large number of holders, certain notes of a dairy company in the aggregate amount of $120,-300, which had been secured by the deposit with the original trustee of various securities. The accountant had received dividends on certain securities in the amount of about $24,237 and it was accounting in the court below for its distribution of this sum. Among the many payments made by it out of these dividends was one of $552 to Dairy Operators Company. When the account was presented, along with the petition for its confirmation, appellant, representing Anna C. Trasoff and Morris Brodsky, the holders of notes of the face value of $1800 (as stated in his history of the case, or $1200 as stated in the opinion of the court below), filed an answer to the petition and exceptions to the account

"averring fraud, misconduct and breach of trust," and objecting, inter alia, to the payment made to the Dairy Operators Company as well as to a large payment to another trust company, the holder in escrow of many notes.

Appellant's clients belong to a large group of holders of notes. As stated by LAMBERTON, J., for the court below, "these notes were secured by common stocks which had become practically valueless, and consequently, under the account as filed, there was but a pittance payable to the noteholders," but, as also stated, if all of the exceptions had been sustained the noteholders would have been paid in full. The court below, however, after a full hearing lasting several days, dismissed all the exceptions save those applying to the payment of $552 to Dairy Operators Company, which payment the court held had been improperly made through a "mistake on a legal point as to which even lawyers might well differ." By direction of the court the accountant included this payment in an amended schedule of distribution under which the amount of the surcharge was distributed to the noteholders other than the dairy company. In the meantime appellant had filed his petition for the allowance of a counsel fee to him out of the surcharge upon the theory that his action had preserved a fund of $552 for the benefit of all the noteholders and he was therefore equitably entitled to a reasonable compensation out of the fund. It was further averred by appellant in his petition that he had received no compensation from the exceptants, or from any other noteholders, and "that he had agreed to look for his compensation to the fund created by any surcharge against the accountant" that the court might order and decree.

In proceeding to the disposition of appellant's rule the court below properly said: "There are two lines of cases to be considered. In the one, counsel for some of a group has been allowed compensation out of the

estate. But in all of these cases, it will be found, either that the estate itself has been preserved from dissipation by the efforts of counsel, as in *Trustees v. Greenough,* 105 U. S. 527, 26 Law Ed. 1157, or that the amount of the estate has actually been increased, as in *McKelvy's* and *Sterrett's Appeals,* 108 Pa. 615, and *Weed's Estate. Bank's Appeal,* 163 Pa. 600. In the other line of cases, the efforts of counsel have not in any way affected the estate as a whole, but have been beneficial to a group within the estate in that they have changed the order of distribution. In these latter cases, the courts have refused to allow fees of counsel to be paid out of the estate."

The principle announced in *Trustees v. Greenough,* and affirmed in *Weed's Estate. Bank's Appeal,* both supra, was thus stated: "One jointly interested with others in a common fund and who in good faith maintains the necessary litigation to save it from *waste* and *destruction* and secure its proper application, is entitled, in equity, to reimbursement of his costs as between solicitor and client, either out of the fund itself, or by proportional contribution from those who receive the benefits of the litigation." (Italics supplied.)

The distinction referred to by the court below was elaborated in *Harrison's Estate,* 221 Pa. 508, 70 A. 827, and *Com. v. Order of Solon,* 193 Pa. 240, 44 A. 327.

Although the fund covered by this accounting was not in the hands of the court itself it was in the custody of a responsible trustee. None of the charges of fraud, misconduct and breach of trust made by appellant was sustained by the court below. It was expressly stated by that court that the surcharge was not made by reason of any fraud or misconduct but because the amount thereof had been paid out through the adoption by the accountant of an erroneous conclusion upon a debatable question of law. The efforts of appellant did not increase the amount of the estate.

Under these circumstances we think we should fol-

low the cases of *Com. v. Order of Solon,* [193 Pa. 240, 44 A. 327] and *Com. v. City Trust, Safe Deposit and Surety Co.,* 38 Pa. Superior Ct. 536.

In the Order of Solon case a judgment of ouster had been entered against that beneficial corporation and a large fund came into the hands of the receiver appointed by the court. The claimants were the holders of benefit certificates of membership. Certain parties obtained assignments of a large number of certificates and through the attorney, whose compensation was under consideration in the case, presented them before the auditors and successfully objected to the payment of other claims to the amount of about $50,000; the fund for distribution to valid claims was increased by that amount. The claimants represented by the attorney contended his counsel fee should be paid out of the fund; the auditors awarded him $3,130.62; the court below overruled exceptions to this allowance, but the Supreme Court, upon appeal, reversed. In the course of its opinion it was pointed out that the attorney had no claim *at law* against the certificate holders who had neither retained him nor even impliedly requested his professional services, but conceded that the distribution of a fund in the hands of a receiver or trustee should be governed by *equitable* principles, and that where the attorney of one of several parties, all equally interested, *"secures* a fund which would otherwise have been *embezzled* or *lost,* and all share equally in the distribution, it is but equitable that all should share in the expense which produced the fund, although but one moved in the matter." (Italics supplied.)

Here, there was no danger of loss or embezzlement. In the City Trust, Safe Deposit and Surety Company case the fund, amounting to $683,000, was in the hands of a receiver. The auditors appointed to distribute it awarded the receiver as compensation more than $38,000, and to themselves $20,000. Upon exceptions, the compensation of the receiver was reduced to $25,000,

and of the auditors to $10,000. A claim of $1000 was presented by the attorneys for the exceptants "for professional services rendered by them in effecting a reduction of the fees and charges as claimed by the receiver and the auditors." The court below sustained exceptions to the allowance of this counsel fee. In affirming, this court followed the Order of Solon case upon the ground that there had been no allegation of *malfeasance* on the part of the receiver or the auditors nor was any fund *recovered* by reason of the services of the counsel to whom the allowance had been made.

Appellant cites and relies upon the case of *Harris' Appeal. Jacoby's Appeal,* 323 Pa. 124, 186 A. 92. The fund there in question was the amount of damages awarded the owner of certain real estate taken under condemnation proceedings, and upon which a bank held a first mortgage. The owner employed an attorney to represent her in the condemnation proceedings, his fee to be 10% of the gross amount collected. The mortgagee bank knew of the employment and kept silent during the proceedings. The board of view awarded the property owner $67,000, which was less than the mortgage debt. The mortgagee sought to have the entire amount of the award paid to it as a lien creditor; the court below awarded the fund to it, but permitted the attorney "to intervene and file exceptions to the dismissal of his claim to 10% of the award as counsel fee" and costs. The owner was insolvent and the mortgagee insisted that the attorney must look to her for his fee and costs. The first paragraph of the syllabus reads: "An attorney has a charging or equitable lien, for the reasonable value of his services and costs of litigation, upon a fund in court or otherwise applicable for distribution on equitable principles, which his services *primarily aided in producing* and to which, by agreement with his client, he is to look for compensation." (Italics supplied.) The opinion contains a review of many cases and concludes:

"We base our decision upon the facts that the primary right to institute and conduct the proceedings in behalf of the property, before the board of view, was in the property's owner; that the mortgagee who loaned money and took a first lien on this property as security therefor was chargeable with knowledge of the fact that if the property should be subjected to condemnation proceedings, (as it was), the right of action for damages was in the owner and this right of action carried with it the right to engage counsel to protect the interests of both the owner and the mortgagee, whose interests in such proceedings were not antagonistic but identical; that the *mortgagee knew of the employment* of Attorney Jacoby by the owner to protect the joint interests of the owner and the mortgagee in these condemnation proceedings and apparently approved of his employment and of what he did professionally in the matter; and that the professional efforts of this attorney *produced, to a substantial extent,* the fund for distribution, to which fund the attorney was required, under his agreement with his record client, to look for compensation, and against which the attorney had, under the circumstances here present, an equitable claim which has often received judicial recognition under the name of a 'charging lien.'" (Italics supplied.)

None of the grounds upon which the allowance was sustained in the case just cited is present in the case at bar. The court below had full knowledge of all the facts surrounding the accounting and of the failure of appellant to establish a substantial foundation for his exceptions. We are not convinced that it erred in discharging appellant's rule.

Order affirmed.