Metropolitan Life Insurance Company, Appellant, *v.* Doty et al.

582

Argued April 19, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-
FELD, PARKER and HIRT, JJ.

*D. C. Jennings,* with him *Daniel S. Robinson* and
*W. E. Edgecombe,* for appellant.

*Joseph J. Baer,* with him *John W. Lord, Jr.,* Special
Deputy Attorney General, *Orville Brown,* Deputy At-
torney General, and *Claude T. Reno,* Attorney Gen-
eral, for appellee.

OPINION BY KELLER, P. J., July 19, 1940:

This appeal raises only a single question of law.
The appellant issued a policy of life insurance, insur-

ing the life of Gaetano Corrado, payable on his death to his estate. On his death, after deducting indebtedness due the insurance company, there was payable on the policy about $61,000. This was claimed by the Secretary of Banking as Receiver of an insolvent bank to which Corrado had assigned the policy, with notice to the insurer, subject to the indebtedness due the insurer. The fund was also claimed by the Executors of Corrado's will. Each claimant threatened suit. Thereupon the insurance company filed a bill in equity to compel the claimants to interplead, in order to relieve itself of the danger or inconvenience of being compelled to defend two actions and the possibility of being compelled to pay more than once the proceeds of said policy—which it admitted was due and owing and offered to pay into court.

The court decreed, pursuant to the agreement of the defendants, that they interplead, and framed an issue to determine which of them was entitled to the fund which had been paid into court. The issue, it may be stated, resulted favorably to the bank. But the court refused to grant the sixth prayer of the insurance company, complainant in the bill, which asked that a counsel fee be allowed it, to be taxed as costs in the proceeding, and that the clerk of the court be directed to pay the same to its solicitor out of the fund paid by it into court, basing its refusal on the ground that the insurance company was not entitled to have its counsel paid the fees incurred on its behalf in this proceeding out of the fund in court. The court, however, directed that $1250 of the amount originally paid into court, should be held awaiting the final disposition of said claim. The insurance company appealed.

The adjudication filed by the learned Chancellor, Judge CARR, with its findings of fact, discussion and conclusions of law (See 35 D. & C. 331) so clearly and cogently states the applicable principles of law and so

584

fully sustains the decree entered, that we might well rest our judgment affirming the decree upon it, without further discussion. But, as the argument of the appellant refers to certain matters not specifically adverted to by the court below, we shall discuss them.

In refusing the appellant's claim the learned Chancellor said: "Its claim is based upon the necessity for the institution of this proceeding by it in order to avoid a multiplicity of actions and the danger of being compelled to pay the proceeds of the insurance more than once. It urges that, although the court is without power at law, under the Interpleader Act of March 11, 1836, P. L. 76, 12 PS 581, to allow counsel fees and costs to a disinterested stakeholder who has paid the money into court, it may do so in equity, on the theory that one disclaiming his own rights in the fund ought not to have to bear any part of the costs or expenses of a controversy that he had no hand in creating, and in which he has no other interest than that of self-protection, and cites *Appeal of Jordan*, 10 W. N. C. 37 (1881). The conditions under which counsel fees may be allowed in equity are now more narrowly defined by our Supreme Court, and such allowances are restricted to that class of cases where counsel's services protect a common fund for administration or distribution under the direction of the court, or where such fund has been raised for like purpose: *Hempstead v. Meadville Theological School*, 286 Pa. 493 [134 A. 103]. The rule permitting them rests upon the ground that, where one litigant has borne the burden and expense of a litigation that has inured to the benefit of others as well as himself, those who have shared in the benefits should contribute to the expense, and the most equitable way of securing such contribution is to make such expenses a charge on the common fund. This proceeding is not within the terms of the rule. Metropolitan has not, for the benefit of others, taken upon itself the burden

and risks of litigation. Its labors have not resulted in creating, preserving, or protecting a common fund to be shared in by others who stood idly by. It has not saved the rightful claimant from the expense of employing counsel and asserting its own rights. On the contrary, it has brought the money into court solely in order to save itself from the expense and risks of litigation. Its prayer was for its own exclusive relief. Under these circumstances, authority for the allowance does not exist."

While the insurance company has throughout referred to itself as a 'stakeholder', and a number of decisions, both in the Supreme Court and this Court, have loosely applied that term to the present situation, strictly speaking it is applicable only in the sense that it admits that it owes the money under the policy and has no defense to its payment. Our Supreme Court discussed the point in the case of *Dauler v. Hartley,* 178 Pa. 23, 34-37, 35 A. 857. Originally the meaning of 'stakeholder' undoubtedly was "A person with whom money is deposited pending the decision of a bet or wager" (Rapalje & Lawrence's Law Dictionary) ; or "A stakeholder is a depositary for both parties of money advanced by them, respectively, with a naked authority to deliver it over upon the proposed contingency. He is not regarded as a party to the illegal contract." (23 A. & E. Ency. of Law, p. 18. See *Cobbett v. Gallagher,* 339 Pa. 231, 13 A. 2d 403, for an instance of a real stakeholder.) It has been broadened to mean, a person who holds money or property which is claimed by rival claimants, but in which he himself has no interest.

The fund in this case is the proceeds of a *contract* between the insurer and the insured, under which the former agreed to pay the money to the person entitled to it under the contract. Appellant was a contracting party and, for a valuable consideration, to wit, the payment of premiums, agreed on the death of the insured

to pay the amount of the insurance contract to the person legally entitled to the same; and it recognized in the policy contract the right of the insured to assign the policy, on giving it notice of the assignment. Hence, as every other party to a contract, it assumed the ordinary and usual burden of making payment to the person legally entitled to it. However, for the protection of persons liable to pay money, to which more than one person lays claim, the law graciously allows the debtor the right to apply to the courts for an order or decree directing the rival claimants to interplead so that it may be determined which of them is legally entitled to the money. But this proceeding is solely for the benefit of the debtor, or the person who has contracted to pay the money; and not for the advantage of the rival claimants, unless both the parties claim specific property which cannot be replaced when delivered to one of them. Hence there is no valid reason why the party legally entitled to the money should be required to pay the counsel of the debtor his fee for instituting proceedings which were for the sole benefit of his client who applied for the interpleader. The protection which the appellant secured by way of relief from the inconvenience or danger of being compelled to defend two actions and from the possibility of having to pay the fund twice, is easily worth the expense incident to the payment of the counsel fee of its own attorney, whose services operated solely to its own benefit. See *Insurance Co. v. Corbin,* 34 Leg. Int. 36.

We have several times[1] given at some length the history of the manner in which the judges of this Commonwealth, before we had courts of equity, applied the principles of equitable interpleader, as they were enforced in the Court of Chancery in England, to our

---

[1] *Clarke & Cohen v. Real, etc.,* 105 Pa. Superior Ct. 102, 108, 109, 159 A. 454; *Fisher v. Stevens Coal Co.,* 136 Pa. Superior Ct. 394, 397-400, 7 A. 2d 573.

common law actions, by motion or rule, long before the Act of March 11, 1836, P. L. 76, which only gave the newly created District Court of Philadelphia the remedy by interpleader which the courts of common pleas enjoyed under our Pennsylvania Common Law, or the Act of June 16, 1836, P. L. 784, which conferred on the Supreme Court of Pennsylvania, when sitting in Philadelphia, and the courts of common pleas for that city and county certain powers and jurisdiction in equity, among them, "The determination of rights to property or money claimed by two or more persons, in the hands or possession of a person claiming no right of property therein."

But in all of them, whether under (1) the common law of Pennsylvania, (2) the Act of March 11, 1836, or (3) the equity powers granted under the Act of June 16, 1836, P. L. 784, and since extended to all courts of common pleas, it has never been held that the person applying for the protection afforded by the interpleader proceedings is entitled, except in very unusual circumstances, to have his counsel, whose services were for his sole benefit, paid by the successful party in the interpleader issue, and the fund to which the latter was legally entitled thereby reduced.

Whatever may be the rule in England, where attorneys' costs in actions generally are chargeable against the losing party, it has never been the law or practice in this Commonwealth, except as respects (1) the $3 attorney fee taxable in actions at law, (2) the garnishee's counsel fee specially allowed by the legislature in attachments, and (3) the allowance of a fee in equity where counsel's services protected or raised a fund for administration or distribution, as pointed out in *Hempstead v. Meadville Theological School*, 286 Pa. 493, 134 A. 103. See along the same lines, *Peoples-Pittsburgh Trust Co. v. Pittsburgh United Corp.*, 334 Pa. 107, 115, 5 A. 2d 890; *Wilbur's Est.*, 334 Pa. 45, 73, 5 A. 2d 325;

*Harrison's Est.*, 221 Pa. 508, 70 A. 827; *Com. v. Order of Solon*, 193 Pa. 240, 44 A. 327; *Com. v. City Trust S. D. & S. Co.*, 38 Pa. Superior Ct. 536; *Trasoff's Appeal*, 138 Pa. Superior Ct. 165, (*In re Tradesmen's Nat. Bank & Trust Co.*, 9 A. 2d 922). In the last named case, our Brother CUNNINGHAM discussed the subject, with special reference to *Trustees v. Greenough*, 105 U. S. 527, which has been cited by some lower Federal Courts as authority for the allowance of the counsel fees here refused, and pointed out that that decision was limited to cases where one jointly interested with others in a common fund, who in good faith maintains the necessary litigation to *save it from waste*, and secure its proper application, is, in equity, awarded reimbursement of his costs as between solicitor and client, either out of the fund itself or by proportionate contributions from those who receive the benefit of the litigation. It has no application whatever to a case like this one, where an insurance company, which owes money on an insurance contract, for its own interest seeks an interpleader issue in order to be relieved of the inconvenience or danger of defending two actions and the possibility of being required to pay the fund more than once.

The sole case decided by our Supreme Court which is relied upon by the appellant as authority for its position (*Appeal of Jordan & Porter et al.*, 10 W. N. C. 37) establishes no such general principle as that contended for by it in the present case. In that case the City Bank of Harrisburg, which had received from a depositor, Hopper & Co., a number of checks, sent them for collection to its correspondent in Philadelphia, Union National Bank, and drew drafts on the Union National Bank in favor of Hopper & Co. and certain creditors in excess of its credit with the Union Bank. It then made an assignment for the benefit of its creditors.

The amount standing to City Bank's credit in Union Bank on the date of assignment was $3003.90. The drafts which it had issued against that fund amounted to $4020.90.

Union Bank filed a bill in equity against the assignees of City Bank and the various holders of said drafts asking that they be required to interplead in order that it might be determined who was legally entitled to payment out of said fund of $3003.90.

Union Bank had acted only as collecting agent for City Bank and had no interest whatever in the proceeds. *The court ordered the fund to be invested in United States bonds pendente lite* (p. 38). After extensive proceedings before a master, and exceptions to his report, the court below ordered the claim of Hopper & Co. to be paid in full, as their checks were plainly earmarked in the fund, and awarded the balance to the assignees, as over against the claim of First National Bank of Harrisburg, Harrisburg National Bank and Peoples Bank of Newport, which had been awarded the balance pro rata by the master. The court below also ordered that a counsel fee of $100 should be awarded Union Bank as costs, and directed that half the costs should be paid by said banks and half out of the fund, that is, out of the balance awarded to the assignees of City Bank. Nothing was awarded against Hopper & Co., the successful claimant. The three banks appealed. The Supreme Court in dismissing the appeals said: "There is no error in that portion of the decree which relates to costs and expenses. The position occupied by the Union National Bank was analogous to that of a stakeholder. It admitted the correct balance, and was always ready and willing to pay the same to the party or parties entitled thereto, whenever it could be done without loss or risk of litigation. It derived no interest or benefit from the money. By direction of court it was invested pending the proceedings to

determine which of the adverse claimants was entitled to recover it, and the increase, of course, enures to the benefit of those who are entitled to the principal. *In view of all the circumstances, the decree was right.* It would have been inequitable to have imposed on the bank any part of the costs or expenses of a controversy which it had no hand in creating, and in which it had no other interest than that of self-protection." (Italics supplied).

The case did not establish as a general principle that counsel fees should be paid in such cases. It held "In view of all the circumstances, the decree was right."

It has not been extended by the Supreme Court to cases where insurance companies, for a valuable consideration, have contracted to pay a specified amount of insurance on the happening of an event; and in our opinion it should not be so extended, in view of the clear utterance of the Supreme Court in *Hempstead v. Meadville Theological School,* supra, p. 495. See also *Maxwell v. Phila. Fire Dept. Relief Assn.,* 138 Pa. Superior Ct. 356, 361, 10 A. 2d 857, 859.

The decree is affirmed at the costs of the appellant.