## In re Cooperative Wage Fund

*Schnader, Kenworthey, Segal & Lewis*, p. p., petitioners.

*Joseph S. Lord, 3rd*, and *Roland J. Christy*, for stockholders, contra.

BROWN, JR., P. J., April 21, 1948.—This court entered an order on February 16, 1948, requiring all claims for compensation for services rendered and reimbursement of costs incurred in connection with the proceeding before the court for the involuntary dissolution of Transit Investment Corporation to be

filed with the prothonotary on or before March 8, 1948, or be forever barred.

In accordance with the order, a petition was filed by the firm of Schnader, Kenworthey, Segal & Lewis, requesting an allowance of compensation in the amount of $3,000 to be paid out of the corporation's funds for professional services as members of the bar in representing shareholders, the trustees of the P. R. T. Cooperative Wage Fund, who instituted the proceeding for dissolution, and reimbursement from such funds in the sum of $412 for the expense of mailing notices of the hearing on that petition to the owners of shares and to creditors as directed by the court.

For a number of years, the corporation had been unable to serve its purpose as an active investment company, and engaged in a slow and piecemeal liquidation of holdings acquired prior to the depression of the nineteen hundred and thirties. The receivership in the District Court of the United States for the Eastern District of Pennsylvania was terminated because the corporation was solvent, but as it had no prospect of attracting new money, its board of directors followed a passive policy of converting assets to cash on a gradual basis. This program offered no likelihood of liquidating its major assets, the Mitten Building and voting trust certificates for 375,194 shares of the common stock and 7,203 shares of the preferred stock of the Philadelphia Transportation Company, or of distributing its assets to the stockholders. Also involved was the cost incident to prolonging the corporate existence. Its common stock, though it was being sold on the market, was valueless, and the value of its preferred stock was seriously impaired.

The initiative to terminate this situation necessarily had to come from the stockholders. Except for the trustees of the Wage Fund, who held thirty-one percent of the preferred stock and twenty-nine percent

of the common stock, the stock was widely distributed, the preferred stock being held by 25,036 persons and the common stock by 8,312 persons. There was no probability of the voluntary dissolution of the corporation either "by a written agreement signed by all the shareholders", or by "the affirmative vote of the holders of at least a majority of the outstanding shares entitled to vote", in accordance with the provisions of section 1102 of the Business Corporation Law of May 5, 1933, P. L. 364, 15 PS §2852-1102. Only the common stockholders were entitled to vote, and the consent of a majority could not have been expected because the common stock was being sold on the market, and this fictitious market value would have been destroyed by the corporation's dissolution.

After a study of the financial and legal status of the corporation, and conferences with its counsel, officers and directors, which revealed the foregoing circumstances, and being of the opinion that there was no possibility of the corporation's resuming actively its objects or materially reducing the deficits to its stockholders, and that liquidation and distribution were in the interest of the preferred stockholders who were the only stockholders having any equity in its assets, claimants advised their clients, the trustees of the Wage Fund, to institute this proceeding for the involuntary dissolution of the corporation pursuant to section 1107 of the Business Corporation Law, 15 PS §2852-1107.

In view of the familiarity of this court with the affairs of the Wage Fund, and thereby with those of the corporation, claimants conferred with and secured the permission of the late President Judge Thomas D. Finletter to file under the above caption an appropriate petition for the involuntary liquidation of the corporation. Claimants prepared and filed such petition, gave notice of the hearing thereon to the registered owners

of common and preferred shares and to creditors, and assembled the necessary financial and other factual information for submission to the court. Answers to the petition were filed by Albert M. Hankin, who deposed that the trustees of the Wage Fund represented a single viewpoint in connection with the corporation's liquidation or dissolution and were not representative of, and had no community of interest with, other individual shareholders, and by the corporation, which averred the willingness of its board of directors to continue and complete the liquidation of its assets in accordance with the program therein set forth, and suggested that there was no necessity for the appointment of a receiver pendente lite or a liquidating receiver, as permitted by section 1108 A and B of the Business Corporation Law, 15 PS §2852-1108. Following the hearing, at which it appeared that the objects of the corporation had wholly failed and their accomplishment was impracticable, the court decreed that the corporation be wound up and dissolved, and that the corporation, by its officers and board of directors, continue with the liquidation of its assets and submit to the court a plan for the distribution thereof.

Subsequently, in approving the plan for the distribution of the assets of the corporation, the court adjudicated that the holders of the preferred stock were entitled to priority in the distribution of the assets; that the assets were insufficient to pay them in full; that there was no value in the common stock, and that the holders thereof were not entitled to share in the distribution.

Claimants' position is that the services rendered by them were for the benefit of all preferred stockholders of the corporation indiscriminately, that although the proceeding for the involuntary dissolution of the corporation was nominally instituted for the trustees of Wage Fund as holders of a large number of shares, it

was initiated for, and has resulted in, benefits to all such stockholders, that otherwise there would have been no means by which the corporation's existence could have been terminated, and, therefore, compensation for such services ought to be borne in the same proportion by all the preferred stockholders and allowed out of the funds of the corporation.

"The general rule is that a trust estate must bear the expense of its administration and the cases show that when a claim for counsel fees is made it must appear that the services for which fees are claimed were necessary; incidental benefit to cestuis is insufficient": Peoples-Pittsburgh Trust Co. v. Pittsburgh United Corp., 334 Pa. 107, 112. "Payment of counsel fees out of a trust fund is justified only where the attorney has performed services necessary to the creation or preservation of the fund out of which payment is sought": Washington Trust Company Account, 350 Pa. 363, 368. In refusing the allowance of counsel fees to attorneys for various beneficiaries of the Cooperative Wage Fund to be paid out of the fund, Judge Finletter stated (in an unreported opinion filed June 27, 1944, under this caption): "An analysis of the cases . . . discloses that the courts have consistently held in Pennsylvania, as in other jurisdictions, that counsel fees are payable out of a fund in court only when the services of an attorney operate to raise or increase the fund, or to protect or preserve it from dissipation." See 49 A. L. R. 1149 and 107 A. L. R. 749.

"Generally these cases have held that where many persons have a common interest in a trust property or fund, and one of them, for the benefit of all, at his own cost and expense, brings suit for its preservation or administration, the court in equity in which suit is brought will order plaintiff to be reimbursed his costs and expenses, including counsel fees, from the property of the trust, or order those benefitted to con-

tribute proportionately toward that expense": Hempstead et al. v. Meadville Theological School, 286 Pa. 493, 497; Peoples-Pittsburgh Trust Co. v. Pittsburgh United Corp., supra, 113-114.

"If an attorney's services to his client *create* a fund for the benefit of others, he is often allowed a counsel fee out of the fund. . . . Or if the trustee is guilty of neglect or misconduct and action by one of a class is necessary to protect the interests of the class, the latter's attorney is entitled to a fee from the fund. . . . This is what is ordinarily meant by 'preserving a fund' as the phrase is used in the cases. . . . On the other hand, where the efforts of the attorney seeking compensation from the fund parallel and incidentally supplement the actions of the trustee or his attorney, and no special need for them is shown, they cannot be compensated for out of the fund. . . .": Smaltz's Trust Estate, 142 Pa. Superior Ct. 463, 467.

The rule is similar in regard to fees of counsel for a stockholder where the fund sought to be charged is *not* brought into court in a proceeding instituted by the stockholder, but is recovered by action of the corporation: Evans v. Diamond Alkali Co., 315 Pa. 335, 340-341.

In the present proceeding, the "record does not show that a fund was rescued from the consequences of a trustee's neglect . . . or was recovered from parties in unlawful possession . . . or was created by establishing an equitable lien on property conveyed in fraud of creditors . . . cases in which fees are allowed": Peoples-Pittsburgh Trust Co. v. Pittsburgh United Corp., supra, 115. To the contrary, the assets of the corporation were being managed and liquidated in an efficient manner by its board of directors, and there was no neglect or misconduct on their part.

Nevertheless, the assets of the corporation were brought into court as the result of claimants' services

in instituting this proceeding for its involuntary dissolution, and thereby a fund was created for distribution among all the preferred stockholders. There is, of course, a "distinction between securing or raising a fund—the actually bringing it into existence, and the mere dealing with a fund which is at the time safely in the custody of the court": Harrison's Estate, 221 Pa. 508, 509; Rose v. Standard Trailer Co., Inc., 153 Pa. Superior Ct. 234, 245.

But in the instant case there was no fund in the court's custody. Claimants' efforts did not "parallel and incidentally supplement the actions of" the corporation's board of directors or its attorneys, but there was "special need for them" by reason of the latter's inability to bring its property under the control of the court as above set forth. Compare Rose v. Standard Trailer Co., Inc., supra, 243, 244, and Peoples-Pittsburgh Transportation v. Pittsburgh United Corp., supra, 120. In view of these circumstances it is apparent that their services were essential for the benefit of all the preferred stockholders, and while they did not necessarily increase the fund, they secured its administration under the direction of the court. Accordingly, their fee in the amount of $3,000, the reasonableness of which has not been questioned, is payable out of the fund.

The mailing of notices of the hearing on the petition for the involuntary dissolution of the corporation to the owners of the common and preferred shares, and to creditors, was directed by the court in accordance with section 1108 of the Business Corporation Law, 15 PS §2852-1108, and was, of course, for the benefit of all parties in interest. Hence, reimbursement thereof in the sum of $412 is a proper expense to be borne by the corporation's funds.

Petition of Schnader, Kenworthey, Segal & Lewis is granted.